# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SCIELE PHARMA, INC., ANDRXORPORATION, ANDRX PHARMACEUTICALS, INC. (N/K/A WATSON LABORATORIES, INC.-FLORIDA), ANDRX PHARMACEUTICALS, L.L.C., ANDRX LABORATORIES (NJ), INC., ANDRX EU LTD., and ANDRX LABS, L.L.C., | C.A. No. 09-37-JJF |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | **PUBLIC VERSION** |
| LUPIN LTD., and LUPIN PHARMACEUTICALS, INC., | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF MOTION OF LUPIN, LTD. TO DISMISS FOR LACK OF JURISDICTION AND IMPROPER VENUE AND DEFENDANTS' MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. §1404

OF COUNSEL:

D. Christopher Ohly
SCHIFF HARDIN LLP
1666 K Street, N.W.
Washington, DC 20006
(202) 778-6458

Douglass C. Hochstetler
Sailesh K. Patel
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
(312) 258-5500

Beth D. Jacob
SCHIFF HARDIN LLP
900 Third Avenue
Twenty-Third Floor
New York, NY 10022
(212) 753-5000

Dated:  March 9, 2009
Public Version Dated: March 19, 2009
907905 / 33956

Richard L. Horwitz (#2246)
David E. Moore (#3983)
D. Fon Muttamara-Walker (#4646)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
fmuttamara-walker@potteranderson.com

*Attorneys for Defendants*
*Lupin Pharmaceuticals, Inc., and Lupin Ltd.*

# TABLE OF CONTENTS

I.    NATURE AND STAGE OF PROCEEDINGS ...................................................... 1

II.   STATEMENT OF FACTS ............................................................................. 3

III.  ARGUMENT ................................................................................................ 7

   A.   Personal Jurisdiction ........................................................................... 7

      1.   Specific Jurisdiction ..................................................................... 9

      2.   General Jurisdiction ................................................................... 11

         a.   Lupin Pharma is not the Alter Ego of Lupin Ltd. ..................... 12

         b.   Contacts with Delaware are Not Sufficient to Warrant a Finding of General Jurisdiction Over Lupin Ltd. .......................................... 16

      3.   Due Process ............................................................................... 19

   B.   Transfer ............................................................................................. 21

IV.   CONCLUSION ........................................................................................... 28

## TABLE OF AUTHORITIES

CASES

*Affymetrix, Inc. v. Synteni, Inc.,*
    28 F. Supp. 2d at 192 (D. Del. 1998)......................................................................24

*Applied Biosystems, Inc. v. Cruachem, Ltd.,*
    772 F. Supp. 1458 (D. Del. 1991).................................................................*passim*

*C.R. Bard, Inc. v. Guidant Corp.,*
    997 F. Supp. 556 (D. Del. 1998)..........................................................12, 13, 14

*Commissariat A L'Energie Atomique* v. *Chi Mei Optoelectronics, Corp.,*
    395 F.3d 1315 (Fed. Cir. 2005)...........................................................................11

*Cont'l Cas. Co. v. American Home Assurance Co.,*
    61 F. Supp. 2d 128 (D. Del. 1999).......................................................................24

*Eli Lilly & Co. v. Medtronic, Inc.,*
    496 U.S. 661 (1990)............................................................................................10

*Foster Wheeler Energy Corp. v. Metallgesellschaft AG,*
    C.A. No. 91-214-SLR, 1993 WL 669447 (D. Del. Jan. 4, 1993) ...........................11

*Gen. Instrument Corp. v. Mostek Corp.,*
    417 F. Supp. 821 (D. Del. 1976)....................................................................24, 25

*Goldlawr, Inc. v. Heiman,*
    369 U.S. 463 (1962)............................................................................................21

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501 (1947)............................................................................................23

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984)............................................................................................11

*Hildebrand v. Steck Mfg. Co.,*
    279 F.3d 1351 (Fed. Cir. 2002)..............................................................................7

*Hollyanne Corp. v. TFT, Inc.,*
    199 F.3d 1304 (Fed. Cir. 1999)...................................................................7, 8, 19

*ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.,*
    147 F. Supp. 2d 268 (D. Del. 2001)....................................................................12

*In re TS Tech,*
    551 F.3d 1315 (Fed. Cir. 2008)............................................................................22-23

*In re Volkswagen of America, Inc.,*
    545 F.3d 304 (5th Cir. 2008) .....................................................................................23

*Jumara v. State Farm Ins. Co.,*
    55 F.3d 873 (3d Cir. 1995)...............................................................................22-23, 25

*KAB Enter Co. v. Ursich Elec. Prods. Inc.,*
    Civ. No. 06-4361, 2007 WL 1118308 (E.D. Pa. Apr. 13, 2007) .............................25

*Max Daetwyler Corp. v. R. Meyer,*
    762 F.2d 290 (3d Cir. 1985) .......................................................................................9

*Merck & Co., Inc. v. Barr Labs., Inc.,*
    179 F. Supp. 2d 368 (D. Del. 2002)................................................................. *passim*

*Monsanto Co. v. Syngenta Seeds, Inc.,*
    443 F. Supp. 2d 636 (D. Del. 2006).........................................................................14

*Power Integrations, Inc. v. BCD Semiconductor Corp.,*
    547 F. Supp. 2d 365 (D. Del. 2008).....................................................................8, 11

*Red Wing Shoe Co. Inc. v. Hockerson-Halberstadt, Inc.,*
    148 F.3d 1355 (Fed. Cir. 1998).......................................................................7, 8, 19

*Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.,*
    230 F. Supp. 2d 655 (E.D. Pa. 2002).......................................................................25

*Sears Roebuck & Co. v. Sears,*
    744 F. Supp. 1289 (D. Del. 1990) ("*Sears I*")......................................................9, 10, 19, 21

*Sears Roebuck & Co. v. Sears, plc,*
    752 F. Supp. 1223 (D. Del. 1990) ("*Sears II*").............................................12, 14, 15

*Shamsuddin v. Vitamin Research Prods.,*
    346 F. Supp. 2d 804 (D. Md. 2004) ................................................................7, 8, 19

*Shutte v. Armco Steel Co.,*
    431 F.2d 22 (3d Cir. 1970)........................................................................................23

*Solae, LLC v. Hershey Canada Inc.,*
    557 F. Supp. 2d 452 (D. Del. 2008)...........................................................................8

*Stratos Lightwave, Inc. v. E20 Commc'ns, Inc.,*
    C.A. No. 01-309-JJF, 2002 WL 500920 (D. Del. Mar. 26, 2002) ..........................23

*Telcordia Techs., Inc. v. Alcatel S.A.,*
　　C.A. No. 04-874-GMS, 2005 WL 1268061 (D. Del. May 27, 2005)................................13, 14

*Tuff Torq Corp. v. Hydro-Gear Ltd. P'ship,*
　　882 F. Supp. 359 (D. Del.1994)...................................................................................22

*United States v. Berkowitz,*
　　328 F.2d 358 (3d Cir. 1964)........................................................................................21

*United States v. Swift & Co.,*
　　158 F. Supp. 551 (D.D.C. 1958)..................................................................................27

*Viam Corp. v. Iowa Export-Import Co.,*
　　84 F.3d 424 (Fed. Cir. 1996).................................................................................7, 19

*World-Wide Volkswagen Corp. v. Woodson,*
　　444 U.S. 286 (1980)....................................................................................................19

*Zeneca Ltd. v. Mylan Pharms., Inc.,*
　　173 F.3d 829 (Fed. Cir. 1999) (Rader, J., concurring) ......................................10, 11

*Zeneca Ltd. v. Mylan Pharms., Inc.,*
　　No. 96-1736, 1996 WL 925640 (D. Md. Jan. 6, 1996)....................................7, 8, 19

**STATUTES AND RULES**

28 U.S.C. §1404(a) .................................................................................... *passim*

28 U.S.C. §1406(a) .......................................................................................21

35 U.S.C. § 271(e)(2)(A) .........................................................................2, 10, 23

Fed. R. Civ. P. 12(b)(c) and (3) ....................................................................1, 28

Del. Code Ann. Title 10, § 3104.........................................................................9

Del. Code Ann. Title 10, § 3104(c)(1,3 ............................................................10

Del. Code Ann. Title 10, § 3104(c)(4)...........................................................9, 18

21 U.S.C. § 355(j).........................................................................................1, 23

**OTHER AUTHORITIES**

15 C. Wright & A. Miller, *Federal Practice & Procedure* (2008)........................ *passim*

The Defendant, Lupin Ltd., has respectfully moved the Court, pursuant to Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure, to dismiss the Complaint filed against Lupin Ltd. in this case, for want of personal jurisdiction over Lupin Ltd. and for improper venue. Both Defendants, Lupin Ltd. and Lupin Pharmaceuticals, Inc., also have moved the Court, pursuant to 28 U.S.C. §1404(a), to transfer this case to the District of Maryland, in which an action among the same parties already is pending. For the reasons set forth herein, these Motions should be granted.

## I.    NATURE AND STAGE OF PROCEEDINGS

This is an action for patent infringement brought under the Hatch-Waxman Act, 21 U.S.C. § 355(j). Although one of the plaintiffs and some of its affiliates are incorporated in Delaware, there is no other connection between any of the parties or the subject matter of the litigation and Delaware.

The Plaintiffs in this case filed two Complaints, one in this Court, on January 15, 2009, and the second in the United States District Court for the District of Maryland, on January 16, 2009. The Defendants agree that venue is proper in the District of Maryland, that Maryland has personal jurisdiction over Lupin Pharma, and that Lupin Ltd. will consent to personal jurisdiction in the District of Maryland. According to both Complaints the Plaintiff, Andrx Corp., is the owner of United States Patent No.s 6,099,859 ("the '859 Patent"), and 6,866,866 ("the '866 Patent"), both of which relate to a formulation including metformin HCl, used in the treatment of diabetes among other uses. Compl. ¶¶ 2, 17, 18. The Complaints allege that Andrx Labs is the holder of New Drug Application ("NDA") No. 21-574, by which the United States Food and Drug Administration ("FDA") granted approval for 500 mg and 1000 mg extended-release metformin hydrochloride tablets. Compl. ¶ 19.

Andrx's principal place of business is in Davie, Florida, although it is a Delaware corporation. Another defendant, Andrx Pharmaceuticals, Inc., is a Florida corporation. Other of its affiliates, Andrx Pharmaceuticals, LLC and Andrx Labs, LLC, are Delaware entities, although they do not maintain offices in Delaware. The parent, Watson Pharmaceuticals, Inc., and each of these entities, have their principal place of business in Florida. Compl. ¶ 2. Sciele's parent, Shionogi, is a Japanese corporation.

The principal place of business of Plaintiff, Sciele Pharma, Inc. ("Sciele"), is in Atlanta, Georgia. Sciele has exclusive licenses under the '859 and '866 Patents in the United States. Compl. ¶¶ 1, 17, 18. The Complaints allege that the Defendants, Lupin Ltd. ("Lupin Ltd.") and Lupin Pharmaceuticals, Inc. ("Lupin Pharma") have infringed the '859 and '866 Patents, pursuant to 35 U.S.C. § 271(e)(2)(A), by reason of the filing by Lupin Ltd. of an Abbreviated New Drug Application ("ANDA"), denominated ANDA No. 90-692, seeking FDA approval to engage in the commercial manufacture, use, or sale of the metformin drug product allegedly claimed in the '859 and '866 Patents before their expirations. Compl. ¶¶ 23, 28.

As acknowledged by both Complaints, the Defendant, Lupin Ltd., is a "corporation organized and existing under the laws of India, having a principal place of business at Laxmi Towers, B Wing, Bandra Kurla Complex, Bandra (East), Mumbai, Maharashtra 400 051, India." Compl. ¶ 4. The Complaints acknowledge that Lupin Pharma "is a Virginia corporation, and a wholly-owned subsidiary and agent of Defendant Lupin Ltd., having a principal place of business at Harborplace Tower, 111 South Calvert Street, 21st Floor, Baltimore, Maryland 21202." Compl. ¶ 3.

Lupin Ltd. and Lupin Pharma filed their Answers and Counterclaims in the District of Maryland on February 3, 2009.[1] They filed an Answer in this Court on Monday, February 9, 2009. In Maryland, Lupin Pharma admitted that the Court has subject matter and personal jurisdiction and that venue is proper in the District of Maryland; Lupin Ltd. admitted that the Court has subject matter and did not contest personal jurisdiction in that District, solely for the purposes of that action. In this Court, in contrast, while Lupin Pharma admitted that the Court has subject matter and personal jurisdiction and that venue is proper, Lupin Ltd. has denied that the Court has personal jurisdiction, Answer ¶ 6, and it has denied that venue is proper in this District. Answer ¶ 5.

## II.   **STATEMENT OF FACTS**

Lupin Ltd. is a pharmaceutical company organized and existing under the laws of India. Its only place of business is in India. *See* N. Gupta Aff., ¶ 3, filed herewith. Lupin Ltd. maintains no presence of any kind in Delaware. Lupin Ltd. has no bank accounts, mailing addresses, telephone listings, offices, manufacturing facilities, research facilities, testing facilities, laboratories, warehouses or any other facilities in Delaware. *Id.*, ¶ 13, 14. Lupin Ltd. does not own or rent any real or personal property in Delaware and it holds no assets in Delaware. *Id.*, ¶ 13. Nor does Lupin Ltd. have a single employee or sales representative in Delaware. *Id.*, ¶ 15.

Lupin Ltd. does not manufacture, develop or test any products in Delaware. *Id.*, ¶ 13. It does not ship or sell any products directly in Delaware, and does not store or warehouse any products in Delaware. *Id.*, ¶ 15. Lupin Ltd. does not directly advertise, market, sell generic

---

[1] The Counterclaim asserts claims relating to the '859 and '866 patents. It also states causes of action relating to two other Orange Book listed patents that relate to the same reference listed drug, United States Patents No. 6,495,162 ("the '162 Patent") and 6,790,459 ("the '459 Patent"). For reasons at present unknown to the Defendants, the Plaintiffs chose not to assert claims under either the '162 or '459 Patents.

products in Delaware or otherwise solicit sales in Delaware.  *Id.*, ¶ 15.  Lupin Ltd. has not

entered into any licensing agreements with any companies in Delaware, it is not registered with

the Secretary of State to do business in Delaware, and is not licensed by the State of Delaware to

sell drugs in the state.  *Id.*, ¶ 15.  It does not specifically target Delaware for sale of its products,

and it does not directly derive any of its revenue from sales in Delaware.  *Id.*, ¶¶ 17, 19.  ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

    The ANDA at issue in this case was prepared entirely by Lupin Ltd., in India, based upon

research and development work that occurred entirely in India.  *Id.*, ¶ 4.  The ANDA was filed by

Lupin Ltd. with the FDA, at the FDA's offices in the District of Maryland.  *Id.*, ¶ 11.  ██

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

    Lupin Ltd. has been sued in this District on only two prior occasions.  In one case,

currently pending, it was sued along with more than a dozen other defendants in what, in

essence, is forced multi-district litigation that has been effectively consolidated by the actions of

the Plaintiffs in that case.  *See Forest Labs., Inc., et al v. Cobalt Labs. Inc., et al.*, C.A. No. 08-

21-GMS-LPS (Consolidated).  For the convenience of all parties, Lupin Ltd. chose in that case

not to contest jurisdiction in this Court to avoid the time and expense of litigation before the

MDL Panel, along with jurisdictional litigation in this Court.  In another recent case, *Glaxo*

*Group Ltd., et al. v. Lupin Ltd., et al.*, C.A. No. 08-551-RFK[2] for purposes of convenience in that

case, Lupin Ltd. chose not to contest personal jurisdiction in this District, stating in its Answer

that "to conserve the resources of the parties and the Court, [Lupin Ltd. does] not contest

personal jurisdiction for the purposes of this action only." *Id.*, Answer ¶ 12.

       Lupin Pharma is a wholly owned subsidiary of Lupin Ltd.  *See* V. Gupta Aff., ¶ 3, filed

herewith.  As noted above, it is a Virginia corporation that has its principal place of business in

Baltimore, Maryland.  *Id.*, ¶ 3.  Lupin Pharma does not manufacture, develop or test any

products.  *Id.*, ¶ 7.  It does not prepare or independently file any ANDAs.  *Id.*, ¶ 7.

       Lupin Pharma is a separate corporation from Lupin Ltd., with separate stock and separate

directors.  *Id.*, ¶ 4.  Vinita Gupta, Lupin Pharma's president, also serves as a non-executive

member of the board of directors of Lupin Ltd.  *Id.*, ¶ 4.  All of the corporate formalities are fully

maintained.  *Id.*, ¶ 4.  ████████████████████████████████████████████

████████████████████████  ████████████████████████████████

████████████  Its accounting in the United States is independently done, and ████████████

████████████████████████████████████████████████████████████

████████████  *Id.*, ¶ 14.  Lupin Pharma has complete control over all of its day-to-day operations,

and it does not require any approval from or by Lupin Ltd. to engage in any transaction in the

United States, other than an acquisition of another company or business entity.  *Id.*, ¶ 5.  Lupin

---

[2] The case was originally assigned to Judge Joseph J. Farnan before being reassigned to Judge
Robert F. Kelly on November 5, 2008 pursuant to the Standing Order in Delaware. *See*
http://www.ded.uscourts.gov/StandingOrdersMain.htm.

Ltd. does not direct Lupin Pharma to take any actions, either for Lupin Ltd. or for Lupin Pharma. *Id.*, ¶ 5. All dealings and transactions relating to the distribution of products in the United States are subject solely to the control and direction of Lupin Pharma.

While Lupin Pharma does not specifically target Delaware for sale of any of the generic products that it markets, Lupin Pharma does sell products, manufactured by Lupin Ltd., ██

████████████████████████████████████████████████████████████████

*Id.*, ¶ 14. Lupin Pharma is registered with the Secretary of State to do business in Delaware, and it has a national registered agent for that purpose. *Id.*, ¶ 3. Lupin Ltd. does not. *Id.*, ¶ 3. Lupin Pharma maintains no presence of any kind in Delaware. It does not store or warehouse any products in Delaware. *Id.*, ¶ 12. It has no Delaware bank accounts, mailing addresses, telephone listings, offices, manufacturing facilities, research facilities, testing facilities, laboratories, warehouses or any other facilities in Delaware. *Id.*, ¶¶ 11, 12. Lupin Pharma does not own or rent any real or personal property in Delaware and it holds no assets in Delaware. *Id.*, ¶ 11. Nor does Lupin Pharma have a single employee in Delaware. *Id.*, ¶ 12.

Lupin Pharma sells products throughout the United States and some of the products that it sells are marketed in Delaware. *Id.*, ¶ 12. ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████

As noted above, Lupin Pharma has been identified as "the United States Agent of Lupin Limited for [this] ANDA," and thus Lupin Pharma participated in the filing of ANDA No. 90-

692, just in that manner. *Id.*, ¶ 9. Lupin Pharma does not serve as an agent of Lupin Ltd.

generally, or for any purpose other than as required by the FDA in the course of Lupin Ltd.'s

filing of ANDAs. *Id.*, ¶ 9. Indeed, Lupin Ltd. has not authorized Lupin Pharma to serve as its

agent for any other purpose. *Id.*, ¶ 10.

## III.   **ARGUMENT**

Lupin Ltd.'s contacts with Delaware are non-existent. As a result, it would be

inappropriate for this Court to exercise personal jurisdiction over Lupin Ltd., without its consent,

or to find that venue is proper in this District. Both Lupin Ltd. and Lupin Pharma submit that

these facts support a finding that transfer of this action to the District of Maryland, where the

Plaintiffs' parallel action is pending, is appropriate, since all parties, including the Plaintiffs,

have agreed to subject themselves to Maryland jurisdiction.

### A.   **Personal Jurisdiction**

Federal Circuit precedent applies to personal jurisdiction challenges in patent cases. *See*

*Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002); *Zeneca Ltd. v. Mylan*

*Pharms., Inc.*, No. 96-1736, 1996 WL 925640, at *1 (D. Md. Jan. 6, 1996); *see also Hollyanne*

*Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 (Fed. Cir. 1999); *Red Wing Shoe Co. Inc. v. Hockerson-*

*Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998); *Shamsuddin v. Vitamin Research*

*Prods.*, 346 F. Supp. 2d 804, 807 (D. Md. 2004). In determining issues which the Federal

Circuit has not addressed, however, the law of the Third Circuit applies. *See Zeneca,* 1996 WL

925640, at *1.

This Court may exercise personal jurisdiction over a non-resident defendant, such as

Lupin Ltd., only if two requirements are satisfied. *See Viam Corp. v. Iowa Export-Import Co.*,

84 F.3d 424, 427 (Fed. Cir. 1996). First, Delaware's long arm statute must confer personal

jurisdiction. Second, personal jurisdiction must be consistent with constitutional requirements of

7

due process. *Id.* *See also Hollyanne,* 199 F.3d at 1307; *Red Wing,* 148 F.3d at 1358;

*Shamsuddin,* 346 F. Supp. 2d at 807; *Zeneca,* 1996 WL 925640, at *2.  The first part of the

analysis, under a state's long arm statute, "must refer to state law even when underlying legal

issues involve federal patent law." *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F. Supp.

1458, 1462 (D. Del. 1991).  In the second, constitutional, part of the analysis, the Court must

determine whether the exercise of jurisdiction would comport with the defendant's right to due

process. *Merck & Co., Inc. v. Barr Labs., Inc.,* 179 F. Supp. 2d 368, 371 (D. Del. 2002) (*citing

Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945)).

   When personal jurisdiction over a defendant is, as here, challenged by a motion to

dismiss, the plaintiff bears the burden of establishing that jurisdiction exists. *See Power

Integrations, Inc. v. BCD Semiconductor Corp.,* 547 F. Supp. 2d 365 (D. Del. 2008).  "'When a

non-resident [defendant] challenges personal jurisdiction, the burden is on the plaintiff to show

that the defendant purposefully availed itself of the privilege of conducting activities within the

forum State, thus invoking the benefits [and] protections of its laws.'" *Solae, LLC v. Hershey

Canada Inc.,* 557 F. Supp. 2d 452, 459 (D. Del. 2008) (*quoting Virgin Wireless, Inc. v. Virgin

Enters. Ltd.,* 201 F. Supp. 2d 294, 298 (D. Del. 2002)).  "As such, the plaintiff may not rely on

the pleadings alone to withstand a motion to dismiss for lack of personal jurisdiction." *Solae,*

557 F. Supp. 2d at 459.  "Rather, 'the plaintiff must come forward with facts to establish by a

preponderance of the evidence that the court can exercise personal jurisdiction over the

defendant.'" *Solae,* 557 F. Supp. 2d at 459 (*quoting Virgin Wireless,* 201 F. Supp. 2d at 298).

Delaware's long-arm statute provides for two types of personal jurisdiction: specific and general. Del. Code Ann. Title 10, § 3104.[3] For purposes of specific jurisdiction, the cause of action must arise out of the defendant's activities within Delaware; for general jurisdiction a defendant is required to have "continuous and systematic contacts" with the state. *Merck*, 179 F. Supp.2d at 371 (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)).[4] Continuous and systematic contacts are present if the defendant or its agent "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or thing used or consumed in the State." Del. Code Ann. Title 10, § 3104(c)(4).

### 1.   Specific Jurisdiction

The Plaintiffs cannot establish specific jurisdiction over Lupin Ltd. in this case. Their alleged cause of action did not arise from any activity by Lupin Ltd. within the State of

---

[3] Del. Code Ann. Title 10, § 3104. Personal jurisdiction by acts of nonresidents.

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

[4] The court should only consider the contacts with the forum state, as contacts the foreign defendant has with other states are entirely irrelevant. *See Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 297 (3d Cir. 1985), *cert denied*, 474 U.S. 980 (1985); *Sears Roebuck & Co. v. Sears*, 744 F. Supp. 1289, 1292 n.3 (D. Del. 1990) (hereinafter "*Sears I*").

Delaware. Under Delaware's long-arm statute, for specific jurisdiction to exist "the cause of action must arise from the contacts with the forum." Del. Code Ann. Title 10, § 3104(c)(1,3); *see also Applied Biosystems*, 772 F. Supp. at 1466. A "jurisdictional act," in this context, is any act or omission committed by a defendant in Delaware that also causes tortious injury in Delaware. *Id.* "Simply put, in order for a defendant to commit an act in Delaware and be subject to subsection (c)(3), *the defendant,* or an agent of the defendant, *must be present in Delaware when the deed is done.* " *Sears I,* 744 F. Supp. at 1294 (emphasis added). The only "act" of infringement, and the only "jurisdictional act" specified in the Complaint is the filing of the ANDA:[5] the Plaintiffs' patent infringement claims are based solely upon the submission of ANDA 90-692 to the FDA, and are said to arise under 35 U.S.C. § 271(e)(2)(A). Compl. ¶¶ 23, 28. As noted above, the ANDA was prepared entirely in India; its filing occurred in Maryland, not Delaware. That "artificial" act of alleged infringement, neither "takes advantage of [Delaware's] commercial laws and legal structures nor targets [Delaware's] markets and residents." *Zeneca Ltd. v. Mylan Pharms., Inc.,* 173 F.3d 829, 836 (Fed. Cir. 1999) (Rader, J., concurring).[6]

The Complaint in this case does not appear to assert that the Court has personal jurisdiction over Lupin Ltd., based upon a theory of specific jurisdiction, even based on the

---

[5] "The 'act' of mailing, for purposes of [Del. Code Ann. Title 10, § 3104] (c )(3), is complete when the material is mailed. Any other interpretation of the statute would mean that anytime tortious injury was felt in Delaware, the alleged tortfeasor could be deemed to have committed an 'act' in Delaware ... [and] would 'eviscerate the distinction between subsections (c)(3) and (c)(4) ....'" *Sears I,* 744 F. Supp. at 1294.

[6] The Supreme Court has determined that the filing of an ANDA is an "artificial" act of infringement. *Eli Lilly & Co. v. Medtronic, Inc.,* 496 U.S. 661, 678 (1990). Therefore, "refusing to apply the government contact exception [to the filing of an ANDA] would undermine the purpose of the Hatch-Waxman Act." *Zeneca,* 173 F.3d at 832. The filing of the ANDA itself does not create personal jurisdiction in Maryland. *Id.* Nor does the act, by itself, create personal jurisdiction anywhere else.

notion that the filing of the ANDA was a "tort." *See Merck*, 179 F. Supp. 2d at 373 (*citing Carbice Corp. v. Am. Patents Dev. Corp.*, 283 U.S. 27, 33, (1931)). Instead, the Complaint appears to rely upon the theory that "each of Lupin [Ltd.] and Lupin Pharma has committed, or aided, abetted, contributed to and/or participated in the commission of, the tortious act of patent infringement *that has led to foreseeable harm and injury to Plaintiffs*, including Sciele, a Delaware corporation." Compl. ¶ 6 (emphasis added). The Complaint alleges no facts to suggest that any such alleged "harm" or "injury" to the Plaintiffs has occurred in Delaware. Indeed, since the Plaintiffs' principal places of business are in jurisdictions *other than* Delaware, it would seem impossible for the Plaintiffs to so allege. The situs of the injury is the place where the patent holder suffers harm, *i.e.*, the patent holder's principal place of business. *See, e.g., Applied Biosystems*, 772 F. Supp. at 1468; *Foster Wheeler Energy Corp. v. Metallgesellschaft AG*, C.A. No. 91-214-SLR, 1993 WL 669447 at \*5 n.7 (D. Del. Jan. 4, 1993) ("Here, where [plaintiffs'] sole Delaware contact is as [plaintiffs'] state of incorporation, and [plaintiffs'] principal place of business is in New Jersey, any injury for alleged infringement of [plaintiffs'] patents occurred in New Jersey, not in Delaware.").[7]

## 2.   General Jurisdiction

More likely, given the allegations of the Complaint, Compl. ¶¶ 7 – 16, the Plaintiffs appear to rely upon the theory that, by virtue of the contacts that Lupin Pharma has had with Delaware, both Lupin Pharma and Lupin Ltd. must be deemed to have "continuous and systematic contacts" with the state. *Merck*, 179 F. Supp. 2d at 371; *Helicopteros Nacionales*, 466 U.S. 408 (1984). Indeed, the Complaint asserts that "This Court has personal jurisdiction

---

[7] *See also Power Integrations*, 547 F. Supp. 2d at 373; *Commissariat A L'Energie Atomique* v. *Chi Mei Optoelectronics, Corp.*, 395 F.3d 1315, 1318 (Fed. Cir. 2005). "[T]he mere filing of an ANDA does not at that point even cause a tangible injury to the patent holder." *Zeneca*, 173 F.3d at 836 (Rader, J., concurring). Hence, any alleged injury would have occurred, if at all, in either Florida, Georgia or Japan.

over Defendant Lupin Pharma by virtue of, *inter alia,* its systematic and continuous contacts with Delaware," and that "This Court has personal jurisdiction over Defendant Lupin [Ltd.] by virtue of, *inter alia,* its systematic and continuous contacts with Delaware." Compl. ¶¶ 15, 16. Since the Complaint fails to allege any direct contact between Lupin Ltd. and Delaware, it appears that the only argument that the Plaintiffs have asserted is that general jurisdiction over Lupin Ltd. may be found to exist by reason of and through imputation of the business activities of its subsidiary, Lupin Pharma.

### a.   Lupin Pharma is not the Alter Ego of Lupin Ltd.

First, it should be noted that even when tortious conduct by a subsidiary exists, it "does not alone justify an exercise of personal jurisdiction over the parent." *Sears, Roebuck & Co. v. Sears plc*, 752 F. Supp. 1223, 1225 (D. Del. 1990) (hereinafter *"Sears II"*). Hence, even if Lupin Pharma "participated" in the filing of the ANDA, by having one of its employees identified as "agent" of Lupin Ltd. for that specific purpose, that "artificial act" does not "justify an exercise of personal jurisdiction over the parent," Lupin Ltd.

Second, there is no basis in this case for disregarding the corporate distinction between the parent, Lupin Ltd., and its subsidiary, Lupin Pharma. Delaware courts regularly decline to "lightly set aside corporate formalities in order to hail a foreign corporation into this judicial district." *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F. Supp. 2d 268, 274 (D. Del. 2001). In order for a court to ignore the boundaries between parent and subsidiary plaintiff must establish some "fraud, injustice or inequity in the use of the corporate form." *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 559 (D. Del. 1998); *Applied Biosystems*, 772 F. Supp. at 1463. Delaware courts look at a series of factors to determine whether the two corporations maintain corporate formalities; including whether they have separate board of directors; separate employees; separate accounting systems; separate bank accounts; and file separate tax returns.

*See C.R. Bard*, 997 F. Supp. at 558.  Absent fraud in the corporate structure a Delaware court is

unlikely to exercise jurisdiction under the alter ego/piercing the corporate veil doctrine.  *Id.* at

559.

As noted above, Lupin Pharma is a separate corporation, with separate stock and separate

directors.  V. Gupta Aff., ¶ 4.   All of the corporate formalities are fully maintained.  *Id.*, ¶ 4.

Lupin Pharma files its own tax returns in the United States and it has its own auditors.  *Id.*, ¶ 4.

████████████████████████████████████████████████  Its ░░░░░░░░░░░

accounting in the United States is independently done, and ████████████████████████

████████████████████████████████████████████  *Id.*, ¶ 14.  Lupin

Pharma has complete control over all of its day-to-day operations, and it does not require any

approval from or by Lupin Ltd. to engage in any transaction in the United States, other than an

acquisition of another company or business entity.  *Id.*, ¶ 5.  Lupin Ltd. does not direct Lupin

Pharma to take any actions, either for Lupin Ltd. or for Lupin Pharma.  *Id.*, ¶ 5.  All dealings and

transactions relating to the distribution of products in the United States are subject solely to the

control and direction of Lupin Pharma.

As further noted above, Vinita Gupta, Lupin Pharma's president, also serves as a non-

executive member of the board of directors of Lupin Ltd.  *Id.*, ¶ 4.  The courts have found that

"[I]t is entirely appropriate for directors of a parent corporation to serve as directors of a

subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its

subsidiary's acts."  *Telcordia Techs., Inc. v. Alcatel S.A.*, C.A. No. 04-874-GMS, 2005 WL

1268061, at *3 (D. Del. May 27, 2005) (*quoting United States v. Bestfoods*, 524 U.S. 51, 69

(1998) (citations omitted) (noting that it is a "well established principle...that directors and

officers holding positions with a parent and it subsidiary can and do 'change hats' to represent

the two corporations separately, despite their common ownership")).  The mere fact that Ms.

Gupta, president of Lupin Pharma, is also a member of the board of directors of Lupin Ltd., does

not, therefore, establish that all of the acts of Lupin Pharma, including any transactions it may

have had in Delaware, should be attributed to its parent, Lupin Ltd.  *See Monsanto Co. v.

Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 645 (D. Del. 2006); *Telcordia Techs., Inc. v. Alcatel,

S.A.*, C.A. No. 04-874-GMS, 2005 WL 1268061, at *3 (D. Del. May 27, 2005).

      A court can assert specific personal jurisdiction over "a parent company, for the acts of

its subsidiaries, to the extent that the actions of the subsidiaries are 'directed and controlled' by

the parent."  *Sears II*, 752 F. Supp. at 1226 (D. Del. 1990) (*quoting Sears, Roebuck & Co. v.

Sears*, 744 F. Supp. 1297, 1306 (D. Del 1990); and *citing Altech Indus., Inc. v. Al Tech Specialty

Steel Corp.*, 542 F. Supp. 53 (D. Del. 1982)).  However, only the "precise conduct shown to be

instigated by the parent" can be attributed to the parent.  *C.R. Bard*, 997 F. Supp. at 560; *see also

Applied Biosystems*, 772 F. Supp. at 1464.  Moreover, a court cannot exercise jurisdiction over

claims against a parent unless the alleged violations by the non-Delaware subsidiaries are

sufficiently related to the conduct in Delaware.  *Sears II*, 752 F. Supp. at 1226.  For jurisdiction

to "arise from" an act, it must have been a "critical step in the chain of events" resulting in the

cause of action before the court.  *Id.* at 1227.  It is the acts giving rise to the claim, and not the

nature of the claim, that determines whether a cause of action arises from contacts within the

forum.  *Id.*  In other words, there must be a causal connection between the act or omission and

the cause of action.

      Here, of course, as noted above, Lupin Ltd. does not direct or control that acts of Lupin

Pharma.  The Complaint contains no facts on which a conclusion may be drawn that any such

direction or control exists.  The "precise conduct" at issue here, the filing of the ANDA, was

undertaken by the parent, not Lupin Pharma, and does not assist the Plaintiffs in an argument that Lupin Ltd. "directed or controlled" Lupin Pharma, even in that "act" in Maryland.   The fact that an employee of Lupin Pharma was identified as "agent" of Lupin Ltd. for the specific purpose of compliance with FDA requirements, does not transform Lupin Pharma into an agent of Lupin Ltd. for all purposes, or indicate that Lupin Ltd. exercised any direction or control over Lupin Pharma's activities, particularly its marketing of products that might be sold in Delaware. *See, e.g., Sears II* 752 F. Supp. at 1225-26.

Lupin Pharma participated in the filing of ANDA No. 90-692, only as a the United States Agent for Lupin Ltd., solely for the purpose of filing the ANDA, as required by the FDA. Answer ¶ 7.  As shown, there is no factual basis for the bald assertions made in the Complaint that Lupin Ltd. and Lupin Pharma "hold themselves out as a unitary entity," or that the activities of Lupin Pharma "are directed, controlled, and carried out by a single entity, namely, Lupin [Ltd.], headquartered in India."  Compl. ¶ 9.  While Lupin Pharma may have acted as an "agent" of Lupin Ltd. for the limited purpose of service of documents, as required by FDA regulations, it was and is not an "agent" of Lupin Ltd. for all purposes.  As set forth below, it is simply inappropriate to pierce the corporate veil and attribute to Lupin Ltd. all of the acts and transactions of Lupin Pharma.  Even if the Complaint alleges that Lupin Pharma participated in the "artificial" act of alleged infringement, by acting as the FDA notice "agent" for purposes of the ANDA, that allegation, at most, provides a basis for proof that Lupin Pharma participated in a hypothetical "tort" in Maryland, not Delaware.  It adds nothing to the Plaintiffs' basis for any assertion of specific jurisdiction over Lupin Ltd.

In sum, Lupin Pharma is not the alter ego of Lupin Ltd.  Lupin Ltd. does not control Lupin Pharma, and Lupin Pharma is not a general agent for Lupin Ltd.  There is no reason to

pierce the corporate veil and attribute to Lupin Ltd. activities of Lupin Pharma, including

activities that might be regarded as jurisdictional "acts."

### b.   Contacts with Delaware are Not Sufficient to Warrant a Finding of General Jurisdiction Over Lupin Ltd.

Even if the Court were wrongly to take account of the acts of Lupin Pharma, in light of

the complete lack of any connection between Lupin Ltd. and Delaware, the contacts between

Delaware and Lupin Ltd. are not sufficient to allow exercise of general jurisdiction over Lupin

Ltd. This Court's decision in *Merck, supra,* is instructive. In *Merck,* this court considered

whether personal jurisdiction existed, in a Hatch-Waxman case over Barr Laboratories. *Id.,* 179

F. Supp. 2d 368. In that case, as here, the plaintiff, Merck, filed a complaint in Delaware, as well

as an identical complaint in the Southern District of New York, alleging infringement of several

patents included in the Orange Book, after Barr filed an ANDA and served appropriate notice on

Merck. The complaint filed in Delaware, like the complaint here, was duly served. The

complaint filed in the Southern District of New York was not served; just as the complaint filed

by Sciele in Maryland was not served. Nonetheless, in the Southern District of New York, Barr

answered and counterclaimed. Similarly here, Lupin Ltd. and Lupin Pharma answered and

counterclaimed in Maryland. *Id.* at 370. As did Lupin here, Barr filed a motion to dismiss for

lack of personal jurisdiction and improper venue. Unlike this case, in *Merck* the plaintiff also

filed suit in Delaware against two other pharmaceutical manufacturers which were pending at the

time of Barr's motion. *Id.* Also, unlike this case, Barr had some minimal contacts with

Delaware; it sold products directly to four customers with total revenues of approximately

$500,000 for each of two years; it had a sales manager for Delaware who made several visits to

the state every year; it made direct sales to national mail order companies which sold to

Delaware; it made yearly payments to Delaware Medicaid; it had a contract with a Delaware

corporation; and it had a wholly-owned Delaware subsidiary which did research and development of pharmaceuticals. *Id.* at 370-371. Despite these contacts with Delaware and despite evident reasons of judicial economy that might have warranted consolidation of Barr's case with the two already pending, the Court granted Barr's motion, effectively requiring that Merck pursue its claims against Barr in the Southern District of New York.

Considering these facts, the *Merck* court concluded that general jurisdiction was lacking, because the totality of Barr's contacts with Delaware did not reach the level of persistence and substantiality required. *Id.* at 374. Rejecting Merck's argument that Barr was subject to general jurisdiction, *id.* at 372, the court stated its conclusions, as follows:

> The Court concludes that Barr does not regularly do business in Delaware. Barr has no employees, local telephone listing, bank accounts, or real estate in Delaware. Barr has a license to sell pharmaceutical products in Delaware, but is not registered with the Secretary of State to do business in Delaware. Barr has one account manager for the existing Delaware customers, who visits Delaware at most three times per year. Moreover, the actions of LHSI, a Delaware entity with whom Barr has a contract, cannot be attributed to Barr because the Court is not persuaded that LHSI is an agent of Barr. (D.I. 26 at 4). Therefore, in the Court's view, Barr's contacts with Delaware, including the sale of drugs to Happy Harry's, are minimal and an insufficient basis to rest general jurisdiction upon.
>
> The Court further concludes that Barr does not solicit business in Delaware. Barr does not advertise in Delaware, nor does its National Account Manager for Delaware solicit new customers. Accordingly, the Court concludes that Barr's conduct does not amount to regularly doing business or soliciting business in Delaware.
>
> Finally, the Court must determine if Barr derives substantial revenue from services, or things used or consumed in Delaware. Although Delaware courts have broadly construed the term "substantial revenue," the Court concludes that Barr's revenue from things used or consumed in Delaware falls below the level required to exercise general jurisdiction. ... The Court is not persuaded that Barr's sales to corporations with national distribution, including Delaware, should be added to Barr's Delaware sales figures because the nexus is too attenuated. Currently, Barr's Delaware revenue, comprising less than 0.13% of total revenue, is not substantial enough to warrant an exercise of general jurisdiction.

*Id.* at 373 (*citing United States v. Consol. Rail Corp.,* 674 F. Supp. 138, 144 n.4 (D. Del. 1987).

Here, as in *Merck*, Lupin Ltd. "does not solicit business in Delaware," it "does not advertise in Delaware, nor does its National Account Manager for Delaware solicit new customers." Merck, 179 F. Supp. 2d at 373.  Unlike Merck, Lupin Ltd. has no Delaware subsidiary.  Here, as in *Merck*, Lupin Ltd. does not regularly do business in Delaware, it has no employees, local telephone listing, bank accounts, or real estate in Delaware.  N. Gupta Aff., ¶¶ 13, 14.  While its subsidiary, Lupin Pharma may have a license to sell pharmaceutical products in Delaware, and may be registered with the Secretary of State to do business in Delaware, Lupin Ltd., like Barr, has no such license and is not registered.  Lupin Ltd. does not have even the few minor contacts with Delaware which were insufficient in *Merck* to find personal jurisdiction.  Lupin Ltd.'s contacts with Delaware are non-existent and an insufficient basis upon which to rest general jurisdiction.

Even if the Court wrongly were to attribute Lupin Pharma's sales activities, "including the sale of drugs to Happy Harry's," to Lupin Ltd., those sales activities "are minimal and an insufficient basis to rest general jurisdiction upon." Merck, 179 F. Supp. 2d at 373.  Lastly, Lupin Ltd. derives no revenues from Delaware.  N. Gupta Aff., ¶ 19.  The revenue that Lupin Pharma might realize "from things used or consumed in Delaware falls below the level required to exercise general jurisdiction" over Lupin Ltd., even if the Court were to wrongly attribute the sales of Lupin Pharma in Delaware to Lupin Ltd. Merck, 179 F. Supp. 2d at 373.

In *Merck*, the Court concluded that "Barr's contacts and revenue in Delaware are minimal, and accordingly, insufficient to satisfy the requirements for jurisdiction under § 3104(c)(4) of the Delaware long-arm statute." Here, too, where the contacts between Lupin Ltd. and Delaware are even more remote, minimal and essentially non-existent, the Court should find that Lupin Ltd.'s contacts with Delaware are "insufficient to satisfy the requirements for

jurisdiction under ... the Delaware long-arm statute." The Court should find that any contacts

that Lupin Ltd. might have with Delaware are insufficient to warrant a finding of general

jurisdiction over Lupin Ltd.

### 3. Due Process

As noted above, any exercise of personal jurisdiction must be consistent with

constitutional requirements of Due Process. *Merck*, 179 F. Supp. 2d at 371 (citing *Int'l Shoe

Co. v. Washington*, 326 U.S. 310 (1945)); *see also Viam Corp*, 84 F.3d at 427; *Hollyanne*, 199

F.3d at 1307; *Red Wing*, 148 F.3d at 1358; *Shamsuddin*, 346 F. Supp.2d at 807; *Zeneca*, 1996

WL 925640, at *2. As this court noted in *Merck*:

> Due process requires that a defendant have certain minimum contacts with
> the forum state in order to ensure that the maintenance of the lawsuit does not
> offend "traditional notions of fair play and substantial justice." The United States
> Supreme Court has held that to maintain general jurisdiction over a foreign
> defendant, the facts must establish "continuous and systematic general business
> contacts" with the forum state. ... Furthermore, the Court of Appeals for the Third
> Circuit has held that a plaintiff must show significantly more than mere minimum
> contacts to establish general jurisdiction.

*Merck*, 179 F. Supp. 2d at 375 (*quoting Int'l Shoe*, 326 U.S. at 316; *Helicopteros*, 466 U.S. at

416 (internal citations omitted)). The constitutionality of an exercise of personal jurisdiction

turns on whether the defendant has "purposefully directed" its activity toward the forum state.

*Applied Biosystems*, 772 F. Supp. at 1470. "If so, and if the litigation arises out of those

activities, the defendant may have established the requisite minimum contacts with the forum

despite the lack of any physical contacts." *Id.* The purposeful availment requirement ensures

that a "defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,'

or attenuated contacts, or of the 'unilateral activity of another party or a third person.'" *Sears I*,

744 F. Supp. at 1296 (*quoting Burger King Corp. v. Rudzwicz*, 471 U.S. 462, 476 (1985)); *see

also  World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Here, as in *Merck*, the Court should conclude, after "considering the contacts [Lupin Ltd.] has with Delaware ... that the requirements of due process are not satisfied because [Lupin Ltd.'s] business contacts with Delaware and its residents are not continuous and systematic." *Id.* Lupin Ltd. has not "purposefully directed" its activity toward Delaware. It maintains no presence of any kind in Delaware. It has no bank accounts, mailing addresses, telephone listings, offices, manufacturing facilities, research facilities, testing facilities, laboratories, warehouses or any other facilities in Delaware. N. Gupta Aff., ¶¶ 13, 14. It does not own or rent any real or personal property in Delaware and it holds no assets in Delaware. *Id.*, ¶ 13. Nor does Lupin Ltd. have a single employee or sales representative in Delaware. *Id.*, ¶ 15.

Lupin Ltd. does not manufacture, develop or test any products in Delaware. *Id.*, ¶ 13. It does not ship or sell any products directly in Delaware, and does not store or warehouse any products in Delaware. *Id.*, ¶ 13. Lupin Ltd. does not directly advertise, market, sell generic products in Delaware or otherwise solicit sales in Delaware. *Id.*, ¶ 13. Lupin Ltd. has not entered into any licensing agreements with any companies in Delaware, it is not registered with the Secretary of State to do business in Delaware, and is not licensed by the State of Delaware to sell drugs in the state. *Id.*, ¶ 15. It does not specifically target Delaware for sale of its products, and it does not directly derive any of its revenue from sales in Delaware. *Id.*, ¶¶ 18, 19. ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

As noted above, the activities by Lupin Ltd. in filing ANDA 90-692 were not directed toward Delaware. The filing of the ANDA in Maryland does not establish "the requisite minimum contacts with [Delaware] despite the lack of any physical contacts" between Lupin

Ltd. and that state. *Applied Biosystems*, 772 F. Supp. at 1470. In the absence of such systematic and continuous contacts with Delaware, and in the absence of any purposeful availment of Delaware by Lupin Ltd., this suit is one in which that "defendant has been haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or attenuated contacts, or of the 'unilateral activity of another party or a third person.'" *Sears I*, 744 F. Supp. at 1296 (*quoting Burger King*, 471 U.S. at 476). This is not permitted under the Due Process clause.

Greater contacts than those evidenced by Lupin Ltd. were at issue in *Merck*. Yet, in that case, the Court concluded that "In light of Barr's insignificant contacts with Delaware the Court further concludes that Delaware has no interest in adjudicating this case." *Merck*, 179 F. Supp. 2d at 375. It said that the *Merck* case, like this one, "does not involve Delaware related claims or Delaware plaintiffs." *Id.* Here, as in *Merck*, the Court should be "persuaded that this case should proceed in [Maryland] where [Sciele] has already filed an identical complaint, [Lupin Ltd. and Lupin Pharma have] counterclaimed," and where, because it is Lupin Pharma's principal place of business, no jurisdictional issues have been raised. *Id.* Here, as in *Merck*, the Court should conclude that the exercise of personal jurisdiction would not be consistent with constitutional requirements of Due Process, and it should dismiss the Complaint in this case against Lupin Ltd., for lack of personal jurisdiction.

**B.    Transfer**

A trial court may decide a transfer motion, made under 28 U.S.C. §1404(a), without reaching or making any determination about its own personal jurisdiction over the parties. *See United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964) (extending *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962), decided under 28 U.S.C. §1406(a)). In this case, this Court need not reach and decide the constitutional and statutory issues concerning the exercise of personal jurisdiction over Lupin Ltd., if it decides that this case should be transferred under 28 U.S.C.

21

§1404(a). The transfer statute provides that "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.*

As a threshold matter, the court must first determine if the plaintiff could have originally brought the case in the district to which transfer is sought. *See Tuff Torq Corp. v. Hydro-Gear Ltd. P'ship,* 882 F. Supp. 359, 361 (D. Del.1994); 15 C. Wright & A. Miller, *Federal Practice & Procedure* § 3845 (2008). In this case, since the Plaintiffs chose to file an essentially identical complaint in the District of Maryland, the Plaintiffs have admitted that this case could have been originally brought in the district to which transfer is sought. *Id.* Since the Defendants also have admitted or consented to jurisdiction in the District of Maryland, where Lupin Pharma's principal place of business is located, no question exists about the jurisdiction of that court over this matter or the parties to this matter.

Second, the Court must consider a non-exhaustive list of factors described by the Third Circuit.[8] The private interests that the Court should consider include: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the fora; and (6) the location of books and records, again, only to the extent that they may not be available in one of the fora. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873 (3d Cir. 1995). The public interests that the Court should consider include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easier, quicker, or less expensive; (3) court congestion; (4) local interest in the controversy; (5) public

---

[8] Because a motion for transfer does not involve substantive issues of patent law, it would appear that this court must apply the law of the Third Circuit. *See In re TS Tech,* 551 F.3d 1315, 1319 (Fed. Cir. 2008) (*citing Storage Tech. Corp. v. Cisco Sys., Inc.,* 329 F.3d 823, 836 (Fed. Cir. 2003)).

policies of the fora; and (6) the trial judge's familiarity with the applicable state law. *Id. Cf. In re TS Tech,* 551 F.3d at 1320 (Fifth Circuit factors); *see also In re Volkswagen of America, Inc.,* 545 F.3d 304 (5th Cir. 2008); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947).

In the Third Circuit plaintiff's choice of forum is entitled to "paramount consideration" and "should not be lightly disturbed." *Shutte v. Armco Steel Co.,* 431 F.2d 22, 25 (3d Cir. 1970). However, "while a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege." *In re Volkswagen of Am., Inc.,* 545 F.3d at 313. Nevertheless, in the Third Circuit, "[t]he burden is upon the movant to establish that the balance of interests strongly weighs in favor of transfer." *Stratos Lightwave, Inc. v. E20 Commc'ns, Inc.,* C.A. No. 01-309-JJF, 2002 WL 500920, at *2 (D. Del. Mar. 26, 2002), *citing Cont'l Cas. Co. v. American Home Assurance Co.,* 61 F. Supp. 2d 128, 131 (D. Del. 1999).

Evaluating and applying these standards, the Court should exercise its broad discretion, 15 C. Wright & A. Miller, *Federal Practice & Procedure* § 3847 (2008), and transfer this case to the District of Maryland. The claim in this case arose from an act that occurred in Maryland, that is, the filing of ANDA 90-692. That filing is the "artificial" act that permits the filing of a claim under the Hatch-Waxman Act, 21 U.S.C. § 355(j) and 35 U.S.C. § 271(e)(2)(A).

In determining the relative convenience of the different fora for each party, the court, not surprisingly, considers the residence of the parties. 15 C. Wright & A. Miller, *Federal Practice & Procedure* § 3849 (2008). Although Sciele and some other Plaintiffs are incorporated in Delaware, none "reside" in this District. To the contrary, as noted above, all of the Plaintiffs have their principal places of business in Florida, Georgia or Japan. Likewise, neither of the

Defendants "resides" in this District. Delaware and Maryland are probably equally convenient or inconvenient for the Plaintiffs.

Lupin Pharma, however, has its principal place of business, and thus "resides," in Maryland. In evaluating the convenience of the parties, it must be admitted that the District of Delaware is not greatly distant from Maryland, where Lupin "resides." Nevertheless, to the extent that time and effort of Lupin Pharma's corporate employees must be expended in defending this litigation, Maryland will afford a far more convenient forum. Maryland is admittedly the Defendants' "home turf," that is, "the forum closest to the [Defendants'] residence or principal place of business which can exercise personal jurisdiction over the Defendant[s] at the time the lawsuit is filed." *Cont'l Cas. Co.*, 61 F. Supp. 2d at 131 n.5 (*citing Affymetrix, Inc.* 28 F. Supp. 2d at 198 n.6)[9]

Hence, while this factor may not have "controlling" weight, it has been noted by the commentators that transfer to a corporate defendant's place of business is particularly likely in patent infringement cases. 15 C. Wright & A. Miller, *Federal Practice & Procedure* § 3848 at n.15, 16 (2008) (*citing, inter alia, Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*, 230 F. Supp. 2d 655 (E.D. Pa. 2002)(center of gravity of alleged patent infringement is where defendant

---

[9] The "home turf rule" is one ordinarily applied when considering the extent to which a plaintiff's choice of forum should be accorded deference. The "home turf rule" is "merely a short-hand way of saying that, under the balancing test inherent in any transfer analysis, the weaker the connection between the forum and *either* the plaintiff *or* the lawsuit, the greater the ability of a defendant to show sufficient inconvenience to warrant transfer." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192 (D. Del. 1998) (*citing Burroughs Wellcome Co., v. Giant Food Inc.*, 392 F. Supp. 761, 763 (D. Del. 1975); *Gen. Instrument Corp. v. Mostek Corp.*, 417 F. Supp. 821, 822-23 (D. Del. 1976) (explaining *Burroughs* )). Under this rule, "[w]here the forum selected by [a] plaintiff is connected with neither the plaintiff nor ... the subject matter of the lawsuit, meeting the burden of showing sufficient inconvenience to tip the 'balance' of convenience 'strongly in favor of [the] defendant' will ordinarily be less difficult." *Affymetrix, Inc.*, 28 F. Supp. 2d at 199 (*quoting Burroughs*, 392 F. Supp 763 (*quoting Shutte*)).

maintains principal and only place of business). [10] *See also Gen. Instrument Corp.*, 417 F. Supp. at 822-23; *KAB Enter Co. v. Ursich Elec. Prods. Inc.*, Civ. No. 06-4361, 2007 WL 1118308, at *2 (E.D. Pa. Apr. 13, 2007)). In this case, the convenience of the parties is a factor that weighs in favor of transfer of this case to Maryland.

The two remaining private *Jumara* factors, the convenience of the witnesses, to the extent that the witnesses may be unavailable for trial in one of the fora, and the location of books and records, to the extent that they may not be available in one of the fora, do not strongly weigh in favor of either Maryland or Delaware, although, for the same reasons set forth above, Maryland would be more convenient for Lupin Pharma.

Several of the public interests described in *Jumara* may well have a bearing on the question of transfer. First, at least one practical consideration could make the trial of this case easier, quicker, and less expensive, if the case is transferred to Maryland: there is no issue of jurisdiction, if the case is transferred. Many federal courts "have concluded that it conserves judicial resources, and furthers the interests of the parties, to transfer a case from a forum in which there is a difficult question of personal jurisdiction or venue to a district in which there are no such uncertainties." 15 C. Wright & A. Miller, *Federal Practice & Procedure* § 3849 (2008) (*citing Kahhan v. Fort Lauderdale*, 566 F. Supp. 736, 740 (E.D. Pa. 1983); and *X-Rail Sys., Inc.*

---

[10] In patent infringement cases, "the 'preferred forum is that which is the center of gravity of the accused activity.' ... The 'center of gravity' for such a claim is in the district where the alleged infringement occurred. In finding that 'center of gravity,' a district court 'ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.' ... 'Appropriate considerations include the location of a product's development, testing, research and production [and] the place where marketing and sales decisions were made, rather than where limited sales activity has occurred.'..." *Saint-Gobain*, 230 F. Supp. 2d at 660 (*quoting Renzetti, Inc. v. D.H. Thompson, Inc.*, No. 96-cv-8520, 2007 WL 230806 (E.D. Pa. May 2, 1997), and *citing S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F. Supp. 1185, 1187-88 (N.D.Ill.1983); and *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 482 n.17 (D.N.J. 1993)).

*v. Norfolk & Western Ry. Co.*, 485 F. Supp. 553, 555 (D.N.J. 1980)). Moreover, the Defendants have filed a counterclaim in the District of Maryland. If transfer is denied here, the possibility exists that proceedings will go forward in two jurisdictions on closely related matters. At minimum, some litigation will undoubtedly ensue relating to the consolidation of claims in the Defendants' counterclaims with those pending in this Court.

Finally, court congestion is a factor to be considered. In the 12 months ending September 30, 2007, the last period for which statistics have been reported by the Administrative Office of the Courts, http://www.uscourts.gov/judbus2007/contents.html, Delaware had four authorized judgeships, but only three United States District Judges. The median time interval from filing to disposition of civil cases terminated in Delaware, during the 12-month period ending September 30, 2007, was 12.5 months. In Maryland, it was 6.3 months. *See* Exhibit 1, attached. In the same period, the 29 civil cases disposed of by trial in Delaware were pending for a median time of 30.3 months. In Maryland, the 45 civil cases disposed of by trial in that period were pending for a median time of 23.2 months. *Id.* In the same 12 month period, the number of pending civil cases in Delaware increased by 4.2%, while the number of terminated civil cases declined by 36.4%. In Maryland, the increase in civil cases was 1.9%, while the number of civil cases terminated also increased by 0.3%. *See* Exhibit 2, attached. In the same 12 month period, the District of Delaware had 157 new patent cases filed, 112 patent cases terminated, and 268 patent cases pending. In Maryland, in the same period, there were 25 new patent cases filed, 26 patent cases terminated, and 27 patent cases pending. *See* Exhibit 3, attached. In statistics recently released by the Court, the District of Delaware had 187 patent case filings in Fiscal Year 2008, an increase of 19%, amounting to 45 new patent cases for each authorized judgeship. *See "D. Del. Continues to See Rise in Patent Filings,*" http://www.delawareiplaw.com/d_del_news_and

_events/. These statistics, on their face, suggest that the docket of the District of Delaware may well be more congested than that of the District of Maryland.

Even these statistics are not completely revealing, since the District of Delaware, at least since mid-2008, has had a standing order, pursuant to which at least twelve judges from other districts will be assigned one of every four cases filed in Delaware, at least for the conduct of pre-trial proceedings. *See* http://www.ded.uscourts.gov/StandingOrdersMain.htm and *"Six New Jersey District Judges Designated to Sit in Delaware,"* August 11, 2008, http://www.delawareiplaw.com/2008/08/.

While the Court should not consider transfer solely for its own convenience, the parties have a legitimate interest in a speedy resolution of their controversy. As one court in another jurisdiction has said about its own overcrowding with cases, at a different time, "Important in connection with the interest of justice involving the element of expedition of the judicial processes and determination resulting therefrom, in the court's opinion, is the factor of the delay necessarily incident to the highly congested state of the docket in this judicial district. The crowded condition of the calendar and the pressure of continuous trials and other judicial proceedings in this court ... are too well known to require elaboration ...." *United States v. Swift & Co.*, 158 F. Supp. 551, 559 (D.D.C. 1958). Here, too, the Defendants respectfully suggest, the degree of crowding of the Court's docket is an important consideration in connection with the "public interest" element of 28 U.S.C. § 1404(a).

When all of the public and private factors are considered, weighed against the Plaintiffs' choice of this forum for litigation one day before its selection of the District of Maryland as a forum in which to file an essentially identical complaint, and evaluated in light of the lack of any meaningful connection between any of the parties and this District, the Defendants respectfully

submit that the Court should exercise its discretion and transfer this case for all further

proceedings to the District of Maryland.

## IV.   **CONCLUSION**

For the foregoing reasons, the Defendant, Lupin Ltd. respectfully submits that, pursuant

to Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure, the Complaint filed against

Lupin Ltd. in this case, should be dismissed by the Court for want of personal jurisdiction over

Lupin Ltd. and for improper venue.  For the foregoing reasons, the Defendants, Lupin Ltd. and

Lupin Pharmaceuticals, Inc., respectfully submit that this case should be transferred, pursuant to

28 U.S.C. §1404(a), to the District of Maryland, in which an action among the same parties is

already pending.

Respectfully submitted,

OF COUNSEL:

D. Christopher Ohly
SCHIFF HARDIN LLP
1666 K Street, N.W.
Washington, DC 20006
(202) 778-6458

Douglass C. Hochstetler
Sailesh K. Patel
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
(312) 258-5500

Beth D. Jacob
SCHIFF HARDIN LLP
900 Third Avenue
Twenty-Third Floor
New York, NY 10022
(212) 753-5000

Dated:  March 9, 2009
Public Version Dated: March 19, 2009
907905 / 33956

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    D. Fon Muttamara-Walker (#4646)
    Hercules Plaza 6th Floor
    1313 N. Market Street
    P.O. Box 951
    Wilmington, DE  19899
    Tel:  (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com
    fmuttamara-walker@potteranderson.com

*Attorneys for Defendants*
*Lupin Pharmaceuticals, Inc., and Lupin Ltd.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on March 19, 2009, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on March 19, 2009, the attached document was Electronically Mailed to the following person(s):

Frederick L. Cottrell, III
Steven J. Fineman
Richards, Layton & Finger P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
cottrell@rlf.com
fineman@rlf.com

Jack B. Blumenfeld
Karen Jacobs Louden
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  1989901347
jblumenfeld@mnat.com
klouden@mnat.com

Bruce M. Wexler
Joseph M. O'Malley, Jr.
Preston K. Ratliff, II
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY  10022
brucewexler@paulhastings.com
josephomalley@paulhastings.com
prestonratliff@paulhastings.com

By:   /s/ David E. Moore
        Richard L. Horwitz
        David E. Moore
        D. Fon Muttamara-Walker
        POTTER ANDERSON & CORROON LLP
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com
        fmuttamara-walker@potteranderson.com

902234 / 33956