

Steven J. Fineman
302-651-7592
Fineman@rlf.com

July 5, 2012

**VIA CM/ECF**

The Honorable Joel Schneider
U.S. District Court for the District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets, Room 1050
Camden, New Jersey 08101

      Re:    *Sciele Pharma Inc. v. Lupin Ltd.*, C.A. No. 09-037-RBK-JS (D. Del.)

Dear Judge Schneider:

    We write on behalf of the Andrx Plaintiffs in response to Lupin's and Mylan's June 29, 2012 correspondence to the Court identifying discovery disputes in advance of the upcoming status conference with the Court on July 13, 2012. First, Lupin has identified two disputes with respect to the Andrx Plaintiffs: one related to Lupin's continued refusal to produce sales data relevant to damages and a second related to Andrx's supplementation of discovery responses and document production. Mylan has identified one potential dispute as well.

        I.    **Lupin's Refusal to Produce Sales Documentation Relevant to Damages to All Plaintiffs**

    Lupin's apparent position with respect to customer-specific sales information is that the documents are not relevant to damages, but that it will only produce them, if at all, to Shionogi counsel alone, even though there are two plaintiffs in this matter. Lupin's reasoning for this peculiar position is that "Andrx [corporate] obtaining Lupin's highly sensitive information would have greater consequence than disclosure to its brand competitor." Lupin Letter (D.I. 485) at p. 3. In further support of this proposed document production arrangement, Lupin has cited extensively to public and legal sources noting that generic product competitors "compete fiercely on price." *See id.*

    Lupin also states that some generic drug companies treat their pricing methods as trade secrets. *See* Lupin Letter p. 5. While that may be true, this desire to protect pricing strategies is the reason that parties enter into protective orders with "Attorneys' Eyes Only" designations, such as in this case. Lupin warns that "protective orders do not offer a 100% guarantee to the producing party" of non-disclosure to the party whom receiving counsel represents. Other than vague references to undefined risks, Lupin has not pointed to any breach of the protective order which has occurred in this matter that would warrant mistrust of the Andrx Plaintiffs or their counsel. *See* Lupin Letter at p. 6. Nor has Lupin pointed to any other basis that would justify

The Honorable Joel Schneider
July 5, 2012
Page 2

suspicion of Andrx Plaintiffs or their counsel. Indeed, Lupin's document production proposal is predicated upon the untenable assumption that Andrx counsel will disclose the sales documentation to its clients.

Lupin further hides behind an assertion that the customer-specific information is not relevant and that neither Shionogi nor Andrx have justified a need for the documents and claims that Plaintiffs are on a fishing expedition. *See* Lupin Letter at p. 7. Shionogi has provided detailed argument for why the requested information is relevant. *See* Shionogi Letter (D.I. 494). Beyond Shionogi's arguments, we note that Lupin has made formal discovery requests of Andrx for the same information that Lupin is refusing to produce. *See* Exhibit A, Lupin's Request for Production No. 99. Andrx will produce top-level summary data and customer specific information to Shionogi and Defendants following resolution of this discovery dispute with Lupin.

Lupin's peculiar and unjustified document production proposal is simply another way to delay the production of sales related documents. This Court should not reward Lupin's continued attempts to refuse to produce information in light of the Court's prior denial of Lupin's request for a wholesale protective order.

## II. Andrx Plaintiffs' Alleged Failure to Supplement Discovery Responses and Document Production

Lupin's letter paints a broad brush over its recent contact with the Andrx Plaintiffs regarding document production and discovery supplementation. Lupin has recently engaged in an unreasonable campaign to create discovery disputes with counsel for the Andrx Plaintiffs. For example, in the days preceding its letter submission to the Court, Lupin sent daily correspondence to Andrx counsel from three different attorney contacts with complaints regarding Andrx's discovery and demanding immediate compliance and meet and confers, sometimes on the same business day.

Interestingly, we note that Andrx expeditiously produced approximately two-hundred thousand pages of documents early in this case. In November and December 2010, Andrx produced more than sixty-thousand pages of documents to Lupin. In March and April 2011, Andrx produced yet another one-hundred twenty thousand pages of documents to Lupin. For nearly a year thereafter, Lupin provided no comment, objection, or concerns about Andrx's extensive and timely production. In fact, not until March 2012, did Lupin first begin to raise concerns that certain documents that Andrx produced a year earlier were supposedly illegible, and Andrx promptly replaced that entire document range upon review of the pages of concern. Not until late April 2012, in fact, did Lupin first raise a substantive issue about Andrx's production.

In contrast to Lupin's statements that Andrx counsel has provided no feedback regarding the categories of documents for which it is searching, prior to Lupin's letter to the Court, on June 26, 2012, Andrx directed correspondence to Lupin counsel providing such information. In particular, Andrx counsel noted that:

> Andrx has been and continues to search its files, has already begun to assemble documents potentially responsive to your recent requests, and will begin

immediately producing materials. We expect that this will include sales and marketing documents, documents related to the launch of the Andrx AG, and various other categories of documents that Lupin has now requested, all as stated in our responses to Lupin's various requests.

*See* Exhibit B, Andrx Letter to Lupin, June 26, 2012 at p. 2. Andrx has and will continue to address Lupin's myriad discovery requests and complaints in as timely a manner as reasonably possible. This includes supplementing document production, interrogatories, and initial disclosures, where appropriate. The Andrx Plaintiffs respectfully submit that no Court intervention is necessary, as the Andrx Plaintiffs have continued to undertake reasonable efforts to supplement their discovery responses.

### III.     Mylan's Potential Dispute

In Mylan's June 29, 2012 letter to the Court, it identified a potential dispute among the parties. Specifically, Mylan complains that its "efforts to depose Plaintiffs have been repeatedly frustrated in this case." Mylan Letter (D.I. 483) at p. 1. This statement lacks merit. Indeed, depositions of Plaintiff-side witnesses to date have been exclusively of Andrx-related witnesses. Mylan further complains that Plaintiffs have yet to designate any corporate witnesses for deposition. Mylan Letter at p. 1. Andrx was recently served with a second notice of deposition pursuant to Rule 30(b)(6) by Lupin, which included numerous new topics. Andrx has informed Mylan and Lupin that it is in the process of reviewing and responding to these new Rule 30(b)(6) topics and that it will make one designation of witnesses pursuant to all pending Rule 30(b)(6) deposition topics, subject to Andrx's objections. Andrx agrees with Mylan that the parties have had productive discussions regarding this issue and that no relief is necessary from the Court.

Respectfully,

*/s/ Steven J. Fineman*

Steven J. Fineman (#4025)

SXF:jjr
Attachments
cc:   All counsel of record (via CM/ECF)

RLF1 6230674v.1