# Morris James LLP

Mary B. Matterer
302.888.6960
mmatterer@morrisjames.com

July 20, 2012

**BY FACSIMILE AND E-FILING**
The Honorable Joel Schneider
United States Magistrate Judge
District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets, Room 1050
Camden, NJ 08101



REDACTED - PUBLIC VERSION
FILED JULY 27, 2012

    Re:    *Sciele Pharma, Inc., et al. v. Lupin Ltd., et al.*,
            C.A. No. 09-037 (RBK) (JS)

            *Shionogi Pharma, Inc., et al. v. Mylan Inc, et al.*,
            C.A. No. 10-135 (RBK) (JS)

Your Honor:

    This firm along with McGuireWoods LLP represents Mylan Inc. and Mylan Pharmaceuticals Inc. (collectively, "Mylan") in the above-referenced, consolidated actions. We write to inform the Court that, contrary to the position taken by Shionogi at the July 13, 2012, discovery conference, the Federal Circuit's decision in *In re MSTG, Inc.*, did **not** resolve the issue presently before the Court. *See generally* 675 F.3d 1337 (Fed. Cir. 2012).



The issue before the Court is whether Mylan should be compelled to produce

    In contrast, the primary issue before the Federal Circuit in *MSTG* was whether, in addition to the protections afforded by Rule 408, Federal Rule of Evidence 501 should be construed to establish a blanket settlement negotiations "privilege." *See In re MSTG, Inc.*, 675 F.3d at 1342-48. The court held that Rule 501 should not be so construed in large part because,

The Honorable Joel Schneider
July 20, 2012
Page 2

**Morris James**LLP

█████████████████████████████████

in the court's view, by adopting Rule 408, Congress had clearly articulated the extent to which settlement agreements and negotiations should be protected. *Id.* at 1343-45. As the Federal Circuit recognized, Rule 408 does permit admission of settlement agreements and negotiations "for purposes other than proving liability or the amount of the claim." *Id.* at 1344. Therefore, the Federal Circuit reasoned, "[a]dopting a settlement privilege would require us to go further than Congress thought necessary to promote the public good of settlement, or in other words, to strike the balance differently from the one Congress has already adopted." *Id.* at 1344.

Shionogi's position that the *MSTG* court addressed the issue presently before the Court "head on" is, thus, inexplicable. (7/13/2012 Tr. at 54:10-12). This point is underscored by the fact that the Federal Circuit expressly stated that it was ***not*** addressing the issue. "Because the issue is not before us, we reserve for another day the issue of what limits can appropriately be placed on discovery of settlement negotiations." *In re MSTG, Inc.*, 675 F.3d at 1347. Indeed, the court held, legal authority limiting the discovery of settlement agreements and negotiations "strongly argues against the need for recognition of a privilege. In other words, the public policy goals argued to support a privilege," namely the facilitation of settlement, "***can more appropriately be achieved by limiting the scope of discovery.***" *Id.* (emphasis added).

Thus, the Federal Circuit left untouched the numerous holdings discussed in Mylan's previous letter that applied Rule 408 and/or Federal Rule of Evidence 403 to preclude ███ ████████████████████████████████████████ In fact, the *MSTG* court expressly recognized that, in accordance with Rule 408, "the district court has discretion to limit discovery of material that is not itself admissible and that was not utilized by the opposing party to protect settlement confidentiality." *Id.* at 1346-47.[1] That is ***precisely*** the situation before the Court.

Related to the latter point, the *MSTG* court also addressed a separate argument that the district court abused its discretion in ordering the production of the underlying settlement negotiations when the settlement agreements themselves had been voluntarily produced. *Id.* at 1348. The district court initially ***declined*** to compel production of the settlement negotiations "because the settlement agreements had already been produced and AT&T had not shown a need for discovery as to the underlying settlement negotiations." *Id.* Only after it became clear that the party resisting discovery of the settlement negotiations had permitted its expert to rely on those negotiations in formulating his damages opinions did the district court permit discovery of the negotiations. *Id.* The Federal Circuit held that the district court did not abuse its discretion because it was clear that the expert considered both the settlement agreements and the underlying settlement negotiations. *Id.* That is ***not*** the situation before the Court.

---

█████████████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████████████████

The Honorable Joel Schneider  
July 20, 2012  
Page 3

**MorrisJames**LLP

Shionogi misconstrues Mylan's Rule 408 argument. Mylan is not seeking a "settlement negotiation privilege" under Rule 501. (7/13/2012 Tr. at 55:13.) How Shionogi could possibly reach that understanding is beyond explanation. REDACTED

REDACTED *MSTG* did not resolve this issue. Therefore, Shionogi's statement that *MSTG* "goes through and does a thorough analysis of all of the arguments that Mylan has put forth" is completely unfounded.[2] (7/13/2012 Tr. at 54:23-25.)

By its own repeated admissions, Shionogi seeks REDACTED

REDACTED As Shionogi seems to concede (7/13/2012 Tr. at 55:7-8), the law prior to *MSTG* supports Mylan's position. *MSTG* did nothing to change that law. Therefore, the law continues to support Mylan's position.

REDACTED

We would be happy to answer any questions the Court may have. We appreciate the Court's consideration of this matter.

Respectfully,

/s/ Mary B. Matterer

Mary B. Matterer (I.D. # 2696)  
mmatterer@morrisjames.com

MBM/

cc: Counsel of record (via email)