THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SCIELE PHARMA, INC., et al.,<br><br>        Plaintiffs,<br><br>  v.<br><br>LUPIN, LTD, et al.,<br><br>        Defendants. | Civil No. 09-37 (RBK/JS) |
| SHIONOGI PHARMA, et al.,<br><br>        Plaintiffs,<br><br>  v.<br><br>MYLAN, INC., et al.,<br><br>        Defendants. | Civil No. 10-135 (RBK/JS) |

**O R D E R**

This matter is before the Court on the Lupin defendants'[1] application for a protective order regarding plaintiff Shionogi's[2] request for what it characterizes as "highly sensitive commercial information." The Court heard extensive oral argument and received the parties' voluminous briefs. For the reason to be discussed Lupin's request is GRANTED in part and DENIED in part.

Background

---

[1] Lupin, Ltd. and Lupin Pharmaceuticals, Inc. (collectively "Lupin").

[2] Shionogi Pharma, Inc. was f/k/a/ Sciele Pharma, Inc.

By way of background, plaintiffs filed this patent infringement lawsuit against Lupin on January 15, 2009.[3] Plaintiffs Shionogi and Andrx are the exclusive licensee and patent holders of U.S. Patent Nos. 6,099,859 ("'859") and 6,866,866 ("'866"), which are embodied in Fortamet®, an extended-release metformin hydrochloride tablet developed and distributed by Shionogi. The tablet is used, along with diet and exercise, to lower blood glucose in adults with type-2 diabetes mellitus. Plaintiffs' drug is designed to control the release and create an extended-release dosage form of metformin. Plaintiffs' complaint alleges defendants Lupin and Mylan violated their patent when they sought FDA approval to market and sell a generic version of Fortamet®. Lupin launched its generic on September 30, 2011. On October 17, 2011, the parties entered into a standstill agreement. On December 6, 2011, the Honorable Robert B. Kugler granted Shionogi's request for a preliminary injunction to bar Lupin from further importation and sales of its generic version of Fortamet®. The Federal Circuit vacated the Order and remanded the matter on February 6, 2012. Judge Kugler reinstated his Order on February 14, 2012. That Order was vacated by the Federal Circuit on July 2, 2012.[4]

---

[3]On August 13, 2010, this action was consolidated with Shionogi's related lawsuit filed against Mylan. D.I. 48.

[4]The Court's discussion is a concise summary of the more detailed procedural history set forth in Judge Kugler's September 15, 2012 Markman Opinion and Order [D.I. 191], and December 6, 2011 Opinion [D.I. 279].

2

Discovery has been proceeding on the merits of the underlying case despite the appeals to the Federal Circuit. On May 11, 2012, the Court denied Lupin's Motion to Bifurcate Liability and Damages and to Stay Damages Discovery. D.I. 445. On the same day the Court also denied Lupin's Motion for a Protective Order Concerning Highly Sensitive Commercial Information Involving Commercial Relationships and Settlement Negotiations. D.I. 444. While the Court denied Lupin's request that all discovery of its "highly sensitive commercial information" should be barred, it did not decide the specific documents that should be produced.[5] The Court directed the parties to "meet and confer ... in a good faith effort to resolve their discovery disputes without intervention of the Court." See May 11, 2012 Order, D.I. 444. Unfortunately, the parties could not resolve their disputes and this application followed.

The parties' discovery dispute generally involves Shionogi's request for information regarding the sales and associated profits of Lupin's allegedly infringing generic. Shionogi argues the requested information is primarily relevant to its reasonable royalty and lost profit damage claim. In lieu of giving Shionogi all the information it requests, Lupin proposed to produce to Shionogi, and not Andrx, a one-page summary (hereinafter "summary

---

[5]The Court ruled "that the damages information they [Shionogi] request is relevant and some or all of it must be produced in discovery." Transcript of May 11, 2012 Hearing, 78:5-7. See also 78:13-18; 79:6-18, D.I. 504.

3

chart" or "chart") that allegedly contains all the needed responsive information.[6] The chart generally identifies Lupin's customers, the products sold, the units sold and the total dollar value of Lupin's gross and net sales. Shionogi rejected Lupin's proposal. It argues it is entitled to detailed information regarding the sales and profits of each of Lupin's customers. Shionogi also argues that Lupin's concerns that its sensitive information will not remain confidential are overblown.[7]

Discussion

The Court's discussion will begin with a summary of several generally applicable principles. The specific disputes at issue will then be addressed.

The Federal Rules of Civil Procedure "allow broad and liberal discovery." Pacitti v. Macy's, 193 F.3d 766, 777 (3d Cir. 1999). Pursuant to Federal Rule of Civil Procedure 26(b)(1), the scope of discovery is as follows: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.

---

[6] The unredacted chart has not been reviewed by Shionogi. The Court reviewed the complete chart in camera.

[7] On July 13, 2012, the Court ruled "that Andrx has made a sufficient showing that it needs the same documents that Shionogi is requesting for its damage analysis." (Tr. 22:8-10). D.I. 502. The Court "overrule[d] Lupin's objection that Andrx needs to make an additional showing to receive copies of the same discovery that Shionogi is receiving." (Tr. 22:19-22). Thus, all discovery produced to Shionogi must also be produced to Andrx.

4

Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Patent cases are not exempt from the broad scope of discovery. See Advanced Medical Optics, Inc. v. Alcon Inc., 2004 WL 1877724 (D.Del. Aug. 18, 2004); In re MTSG, Inc., 675 F.3d 1337, 1346 (Fed. Cir. 2012). Nevertheless, discovery is not unlimited and "federal courts 'should not hesitate to exercise appropriate control over the discovery process' to 'prevent abuse'." MTSG, 675 F.3d at 1346; see also Fed. R. Civ. P. 26(b)(2)(C).[8]

To a large extent Lupin does not contest that the requested discovery is relevant.[9] Nonetheless, Lupin argues its production should be limited because of the special sensitivity of the requested information. Lupin argues disclosure "would have disastrous and far-reaching effects on Lupin's ability to compete in the market for all of its products--not just the generic

---

[8] Since a determination of relevance implicates substantive patent law, Federal Circuit law rather than regional circuit law applies. Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1326 n.8 (Fed. Circ. 1990).

[9] By no means does Lupin concede the point. However, the Court finds that the information is relevant to, inter alia, if and how much in sales Shionogi lost, the lost profits on the lost sales, and the demand for Shionogi's drug. "Deciding how much to award as damages is not an exact science, and the methodology of assessing and computing damages is committed to the sound discretion of the district court." State Industries, Inc. v. Mor-Flo Industries, Inc., 883 F.2d 1573, 1576-77 (Fed. Cir. 1989). See also n.5, infra. For discovery purposes the general information Shionogi requests is relevant. Whether the discovery is admissible at trial is not being decided.

5

metformin extended release products at issue in this case." June 29, 2012 Letter Brief ("LB") at 3, D.I. 485. Lupin's argument does not carry the day. For several reasons the Court will not limit Lupin's production of otherwise relevant discovery solely because of the "special sensitivity" of the requested information. One, the Court signed the protective order the parties proposed. [D.I. 79]. The Order specifically directs that Lupin's confidential discovery may only be used for the prosecution or defense of this action. Lupin has not identified any deficiencies in the Order, nor has it proposed any additions that would give it more assurances that its discovery will not be misused. When the parties submitted their protective order they surely anticipated that highly sensitive information would be requested and produced. Lupin did not request, nor does it now suggest, that any additional provisions are necessary to protect its interests. Two, Shionogi has already agreed to abide by Lupin's "HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL EYES ONLY" designation. Lupin concedes it has no reason to believe Shionogi's attorneys will breach its confidentiality obligations. Three, Lupin has requested, and Shionogi has produced, confidential documents of the type to which Lupin now objects. Lupin's confidential information is not entitled to any more (or less) protection than Shionogi's confidential information. Shionogi is undoubtedly just as concerned as Lupin is that its confidential information will not be used for anti-competitive purposes.

Lupin argues its production should be limited to its summary chart. While the Court will not Order Lupin to produce everything that Shionogi requests, for several reasons the Court will not confine Lupin's production to just the chart. Lupin argues Shionogi "has not put forth any reason why it believes the chart prepared by Lupin ... includes inaccurate information." June 29, 2012 LB at 6. In addition, Lupin argues it will produce a Rule 30(b)(6) witness to testify regarding its chart. Lupin's argument evidences a surprising naïvete. The parties are bitterly litigating the case. It is therefore not surprising that Shionogi does not want to accept Lupin's chart at face value. Further, Lupin's chart is akin to a summary prepared pursuant to Fed. R. Evid. 1006. Pursuant to the Rule, the documents underlying the summary must be produced. U.S. v. Bertoli, 854 F. Supp. 975, 1052 (D.N.J. 1994)(the underlying documents to a summary chart must be produced).[10] Another reason Lupin's discovery is not limited to just its chart is because Lupin has requested (and Shionogi has produced) documents of the type that it refuses to produce. It would be inequitable for Lupin to request "highly sensitive"

---

[10]Lupin argues that if it is required to produce the "underlying documents," it will claim work-product. Id. at 8. The Court assumes that the source materials for the chart are financial documents and reports prepared in the usual course of business. ("[T]hough we call this a summary, this is actually just an extract of the data that's maintained and created in the ordinary course of business. Lupin took that data and put it on this spreadsheet." (Tr. 36:17-21)). This being the case, the Court is hard-pressed to understand how business records can qualify as work-product.

7

relevant discovery from Shionogi but at the same time sustain Lupin's objection to producing the equivalent relevant discovery.

Lupin steadfastly argues that its chart contains all the relevant information Shionogi needs. Not having seen the chart, Shionogi is not in a position to give a definitive yes or no. Albeit, it argues the chart as described by Lupin is deficient. In order to address Lupin's argument head on the Court will Order Lupin to produce an unredacted copy of the chart. The production is <u>not</u> <u>contingent</u> on Shionogi's agreement not to request any additional "highly sensitive" information.[11] Despite Lupin's contrary argument, the Court finds that the identity of its customers, and its sales and profit information, is relevant to Shionogi's lost profit and reasonable royalty claims.[12]

Although Lupin reluctantly agreed to produce its chart to Shionogi, it steadfastly objects to producing customer specific information such as unique purchase terms, including price, rebates, discounts and returns. Not unexpectedly Shionogi is not satisfied with just the chart. Although the Court finds that the sales and profit Lupin earned from its launch is relevant for

---

[11] The Court has already ruled that Andrx shall receive the same discovery produced to Shionogi. The Court has also discounted Lupin's argument that its production of relevant discovery should be barred because of its "sensitivity."

[12] In addition to the other reasons discussed herein, Lupin's profits and sales are relevant to the extent to which it "made use of [plaintiffs'] invention; and evidence ... the value of that use." <u>Georgia-Pacific Corporation v. United States Plywood Corporation</u>, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

8

discovery purposes, the Court is not convinced that Shionogi has made a persuasive case that it needs all the detailed information it seeks. Discovery may be denied where, in the court's judgment, the inquiry lies in a speculative area. Micro Motion, 894 F.2d at 1326.

The Court does not believe the present record is sufficiently developed for it to make a final definitive ruling whether to grant or deny each one of Shionogi's discovery requests. While the Court generally finds that Lupin's sales, profit, etc. information is relevant, the Court is concerned about overkill. If Lupin's representations are correct, then after its chart is produced Shionogi will learn the names of its customers, the gross and net price to each customer, and the total rebates and discounts to each customer. July 5, 2012 LB at 8, D.I. 491. Lupin has not yet made a persuasive argument for why it needs more detailed sales and profit information on a customer level. Thus, at this time the Court will not Order Lupin to produce all of the detailed customer level discovery Shionogi requests. Shionogi is not prejudiced by the ruling. If Shionogi legitimately needs more detail to support its damage claim, the Court will Order Lupin to supplement its production. The Court finds that the best way to proceed is for Lupin to produce its chart and the other documents listed in this Order. After the documents are produced and analyzed, Shionogi shall take Lupin's Rule 30(b)(6) deposition regarding the chart. If after the deposition Shionogi requests additional documents, and

9

the parties cannot resolve any disputes, Shionogi may serve a new application for additional financial documents. If a new application is served the Court directs Shionogi to specify with detailed precision the additional documents it needs and why.[13] The application shall be accompanied by an affidavit from a qualified consultant or trial expert detailing why he/she needs additional documents for the damage calculation. This Order is entered without prejudice to Shionogi's right to re-depose Lupin's witness if it turns out that documents produced after the deposition should have been produced before the deposition. This Order is also entered without prejudice to Shionogi's right to request more information if at trial Lupin's witnesses or experts intend to rely on information derived from the chart.[14]

Having completed its background discussion, the Court will now proceed to address the specific discovery issues that were reserved during the July 13, 2012 oral argument.[15]

---

[13] For example, the Court expects Shionogi will provide more specificity for what it wants rather than just asking for cost data, marketing information, and communications with customers. July 5, 2012 LB at 4-5, D.I. 494. See also Shionogi's Damages Document Request Chart (distributed at oral argument) requesting "[i]nternal and external communications concerning Lupin's actual sales, ...".

[14] See MTSG, 675 F.3d at 1348 (noting that the Magistrate Judge limited discovery to just the settlement agreement, and not the underlying negotiation documents, until MTSG's expert relied on the agreement).

[15] The Court recognizes that the specific issues the Court reserved may overlap with the five categories listed in Shionogi's Damages Document Request Chart.

1.  <u>Lupin's Actual Profit Information (Tr. 42:4-8)</u>

The Court incorporates its prior and subsequent discussion regarding the production of the requested profit information. As noted, Shionogi's request for more detailed information than what will be produced is denied pursuant to Rule 26(b)(2)(C).

2.  <u>Lupin's Contracts with its Customers (Tr. 42:9-12)</u>

Lupin objects to producing copies of its individual customer contracts for the alleged infringing product(s). At this time the Court denies Shionogi's request. As noted, exercising its discretion pursuant to Rule 26(b)(2)(C), the Court is not convinced that the detailed customer specific information Shionogi requests is genuinely needed. Lupin represents that "all of the information that [Shionogi] would get from these documents [individual customer contracts] can be found in the summary chart." (Tr. 42:16-18).[16] If Lupin is correct, Shionogi will get what it needs. If not, the Court can revisit the issue. The Court is mindful of the fact that Lupin has requested, and Shionogi has produced, "dozens" of individual customer agreements of the sort Lupin is seeking to shield. June 29, 2012 LB at 9, D.I. 487. <u>See</u> also Tr. 43:18-25. Thus, although it is tempting to require Lupin to produce the same documents Shionogi produced, the Court must make individualized decisions on the proper scope of discovery. The proper scope of

---

[16] By way of example, Lupin refers to rebates and discounts, actual net prices and actual contract prices. (Tr. 42:19-43:1). Lupin acknowledged the chart contains this information. <u>Id.</u>

11

discovery from Lupin is not necessarily measured by what Shionogi agreed to produce. To be sure, however, Lupin's sensitive financial information is not entitled to any more (or less) protection than Shionogi's information. Lupin's argument that the parties' contracts are different because Shionogi does not compete on price and discounts misses the mark. (Tr. 47:4-5). Lupin seeks to withhold its contracts primarily because of the special sensitivity of the information. The Court discounts this argument. Instead, Shionogi's request is denied based on the Court's application of the factors in Rule 26(b)(2)(C).

3. Shionogi's Request for a Copy of the ANDA Contract with Mylan (Tr. 56:12-13)

Mylan objects to the production of the contract (and associated documents) between it and Lupin wherein Mylan agreed to purchase Lupin's ANDA (hereinafter "contract").[17] By way of background, in 2011 Shionogi and Lupin reached a settlement agreement that was contingent upon Shionogi and Lupin entering into a co-promotion agreement. At or about the same time, Lupin contracted with Mylan to sell its ANDA. Ultimately, Shionogi and Lupin did not enter into a co-promotion agreement and Lupin thereafter terminated the settlement agreement with Shionogi. Lupin also rescinded the agreement with Mylan.

Shionogi argues the contract and associated documents are

---

[17] At one time Lupin did not object to producing the contract. Lupin rescinded its position after Mylan objected.

12

relevant to its lost profits and reasonable royalty calculation. It argues the requested documents will indicate the value placed upon Lupin's ANDA, and therefore its ANDA product. July 5, 2012 LB at 9, D.I. 494. Mylan argues the contract is not discoverable pursuant to F.R. Evid. 408. Mylan contends Lupin is improperly attempting to prove liability or the amount of a claim due by requesting a settlement agreement and information that is barred by Rule 408. It contends the "Rescinded Agreement [between Lupin and Mylan] was clearly in the nature of a settlement agreement." See Mylan's July 5, 2012 LB at 4, D.I. 493. Mylan argues that the contract was "struck to resolve litigation" and should be treated as a settlement agreement. Id. at 7. Shionogi disagrees. In the alternative, Mylan argues the contract is irrelevant because "the generic market is a different creature from the brand market, and an agreement to purchase an ANDA that may or may not infringe a patent that may or may not cover a branded product says nothing of the value of the branded product itself." Id. at 8. It also argues the contract is irrelevant because its scope "extends far beyond the claims alleged by plaintiffs to be infringed by the ANDA products at issue in this case." Id. at 9.

The Court finds that the final negotiated contract between Lupin and Mylan, as well as Lupin's analysis regarding the potential sale of the ANDA to Mylan, which is "referred to in Lupin's June 27, 2012 e-mail (see Shionogi's June 29, 2012 LB, Exhibit I), is relevant and shall be produced. Shionogi's request

13

for documents regarding the entire negotiating history, and all documents regarding the agreement, is denied.  The Court agrees with Shionogi that for discovery purposes the documents to be produced are relevant to the issue of reasonable royalty and other damage calculations.  MTSG, 675 F.3d at 1348.  In the court's view, the value of the ANDA in the marketplace, and the value perceived by Lupin and Mylan, is relevant to the royalty analysis.

Lupin and Mylan correctly point out that Shionogi's claims do not perfectly align with the precise subject matter of the Lupin/Mylan contract.[18]  Nonetheless, the Court is not deciding whether the contract is admissible at trial, just whether it is discoverable.  Just recently the Federal Circuit reiterated that the federal rules "promote a 'broad and liberal' policy of discovery 'for the parties to obtain the fullest possible knowledge of the issues and facts before trial'."  Id. at 1346 (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)).  Further, Mylan's reliance on F.R. Evid. 408 is misguided.  The Court is not determining whether the contract is admissible at trial.[19]  In addition, Mylan's argument is undercut by the Federal Circuit's recent statement that, "[o]ur cases appropriately recognize that

---

[18]For example, Mylan argues, "the scope of the Rescinded Agreement extends far beyond the claims alleged by plaintiffs to be infringed by the ANDA products at issue in this case." July 5, 2012 LB at 9.

[19]Since the issue is not determinative, for present purposes only, the Court accepts Mylan's argument that the contract is a "settlement agreement."

14

settlement agreements can be pertinent to the issue of reasonable royalties." Id. at 1348.

At this time the Court will not Order Lupin to produce additional documents regarding the contract. Although broad, discovery is not unlimited. Id. at 1346. The Court exercises its discretion to limit Shionogi's request for documents pursuant to Fed. R. Civ. P. 26(b)(3)(C). Given the differences between Shionogi's claims and the subject matter of the contract, and absent a more persuasive showing of relevancy, an unlimited inquiry into the Lupin/Mylan negotiations is unwarranted.

4. Documents Underlying Lupin's Summary Chart and Request for Lupin's Profits (Tr. 61:5-8)

For the reasons already discussed, the documents underlying Lupin's summary chart must be produced. See F.R. Evid. 1006.[20] Shionogi's request for "Lupin's profits" has already been addressed in this Order.

5. Discovery Regarding Ashco (Tr. 71:5-8)

Shionogi argues Lupin's production of Ashco's documents is deficient.[21] Ashco is an Indian company that did "after-dinner testing" (Tr. 65:4-5) for Lupin. The test was done to determine the Tmax which is relevant to the infringement issues in the case.

---

[20]Nothing in this Order regarding the production of "underlying documents" should be read to be inconsistent with the Order's provisions limiting the production of some of the requested individual customer sales and profit information.

[21]For purposes of this discussion, the Court is assuming that Lupin has possession, control or custody of Ashco's documents.

15

(Tr. 69:21-70:7). Lupin acknowledges the testing was done for litigation purposes and that its experts will rely upon Ashco's test. (Tr. 65:8-24). Lupin does not intend for Ashco to testify as an expert. (Tr. 65:20-24).

Lupin represents that it produced all of the documents regarding the test Ashco did for it in this litigation. (Tr. 62:25-63:13; 67:8-11; 70:8-16). In addition to its document production, Lupin agreed to produce for deposition the Ashco representative who headed the tests, Dr. Batheja. (Tr. 64:11-23). Shionogi requests additional Ashco documents because it believes Ashco's study was "deeply flawed." (Tr. 63:24-64:6). Shionogi requests a copy of the contractual agreement that covered the test at issue. It also requests information about other testing Ashco did for Lupin.

With some limitations, the Court grants Shionogi's request. The relationship between Lupin and Ashco is plainly relevant to showing bias which is a proper subject of discovery. Lupin, therefore, must produce the contract or agreement that covered the test at issue. Lupin argues there is no contract that generated the test. (Tr. 66:4-8). That being the case, Lupin must produce the contract or agreement that led to the test. If Lupin and Ashco have a master services agreement that covered the test, formal or informal, it must be produced.

The Court agrees with Lupin that it does not have to produce the documents regarding all of the work it did for Lupin.

16

Documents that concern testing done that is irrelevant to this litigation is off-limits. However, clearly all documents regarding the test at issue must be produced. Lupin must also produce information to enable Shionogi to determine the extent and general nature of the work Ashco did for Lupin. For the two years before and two years after the relevant testing occurred, Lupin must identify the gross dollar volume of business it did with Lupin and how much of its total business was generated by Lupin. Lupin must also identify other Tmax testing Ashco did for Lupin or a third party, if any.[22] The Court finds this discovery is relevant within the meaning of Rule 26.

6. RFP 33

The parties narrowed their dispute to "internal and external communications concerning Lupin's actual sales, particularly those since September 2011." See Damages Document Request Chart. Lupin has agreed to produce internal communications. For the reasons discussed herein, Shionogi's request for "external communications" is denied.

7. RFP 35, 36

Shionogi narrowed these requests to ask for documents that

---

[22] If this Tmax testing was done, and if the parties dispute whether documents regarding the testing must be produced, the Court will decide after Mr. Batheja's deposition whether the documents must be produced. Consistent with the Court's usual practice, if documents are produced after the deposition that should have been produced before, Shionogi will not be prejudiced and it will be given an opportunity to re-depose the witness about new documents if the testimony is legitimately needed.

17

identify all entities in the chain of distribution from Lupin to the end user of its ANDA product, and further discounts or rebates offered by or to these entities. The Court understands this issue is moot as Lupin has agreed to produce the responsive documents. The parties' agreement shall not be withdrawn because of this Order.

    8.   <u>RFP 37, 45, 80, 81</u>

These requests address Lupin's customer contracts and the ANDA agreement with Mylan. For the reasons discussed herein, the request for the customer contracts is denied; the request for the ANDA contact is granted.

    9.   <u>RFP 40, 41, 42</u>

Shionogi narrowed these requests to ask for customer specific documents regarding shipping, sales and pricing of Lupin's ANDA product. Shionogi also requests representative documents including customer agreements, invoices, bills of lading, rebate offers, discount offers, and return verifications. For the reasons already discussed, the request is denied. However, Lupin shall produce the underlying source documents used to prepare its chart.

    10.   <u>RFP 79</u>

Shionogi requests information on the profitability of Lupin's ANDA product and Lupin as a whole. At this time the only "profit" documents that need to be produced are those specifically discussed herein.

<u>Conclusion</u>

18

For all the foregoing reasons, it is hereby ORDERED this 27th day of August, 2012, that Lupin's application for additional discovery is GRANTED in part and DENIED in part; and

IT IS FURTHER ORDERED that Lupin shall produce the following documents:

1. The unredacted Summary Chart;

2. The documents underlying the Summary Chart that are required to be produced pursuant to F.R. Evid. 1006;

3. Lupin's rescinded contract with Mylan for the sale of its ANDA and Lupin's "analysis regarding the potential sale of the ANDA to Mylan" that is referred to in its June 27, 2012 e-mail;

4. The Ashco documents and information discussed at pages 15 - 17 herein;

5. Documents responsive to RFP 33, 35, 36 as agreed to by the parties;

6. The "profit" and other documents identified herein that the Court directed Lupin to produce; and

IT IS FURTHER ORDERED that the foregoing documents shall be produced by September 14, 2012; and

IT IS FURTHER ORDERED that Shionogi's request for additional profit/sales/damage documents is DENIED without prejudice to Shionogi's right to submit a new application to the Court consistent with the conditions in this Order.  The application may only be filed after Shionogi takes Lupin's Rule 30(b)(6) deposition regarding Lupin's Summary Chart.

s/ Joel Schneider<br>
JOEL SCHNEIDER<br>
United States Magistrate Judge