# M<small>ORRIS</small>, N<small>ICHOLS</small>, A<small>RSHT</small> & T<small>UNNELL</small> <small>LLP</small>

1201 N<small>ORTH</small> M<small>ARKET</small> S<small>TREET</small>
P.O. B<small>OX</small> 1347
W<small>ILMINGTON</small>, D<small>ELAWARE</small>  19899-1347

_____

(302) 658-9200
(302) 658-3989 FAX

**K<small>AREN</small> J<small>ACOBS</small> L<small>OUDEN</small>**
(302) 351-9227
(302) 425-4681 FAX
klouden@mnat.com

Original Filing: November 26, 2012
Redacted Filing: December 6, 2012

REDACTED - PUBLIC VERSION

**BY E-FILING AND FAX**

The Honorable Joel Schneider
United States District Court for the District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Room 1050
Camden, New Jersey  08101

Re:   *Sciele Pharma, Inc., et al. v. Lupin Ltd., et al.*, C.A. No. 09-037-RBK-JS

Dear Judge Schneider:

Pursuant to the Court's November 2, 2012 Order (D.I. 556), Plaintiff Sciele Pharma, Inc., n/k/a Shionogi Inc. ("Shionogi") submits this letter regarding the outstanding discovery disputes between Shionogi and Defendants Lupin Ltd. and Lupin Pharmaceuticals, Inc. ("Lupin") in advance of the November 29, 2012 status conference.

Shionogi has met and conferred with Lupin and Mylan Inc. and Mylan Pharmaceuticals, Inc. ("Mylan") in an attempt to resolve these discovery disputes.  Although Shionogi believes that there are no disputes between it and Mylan that require resolution at this time, the following disputes with Lupin (discussed in detail below) require the Court's attention:

- Lupin's continuing failure to comply with the Court's August 27, 2012 Order by refusing to produce key damages related discovery and information relating to Lupin's clinical trial;

- Lupin's failure to provide deposition dates for almost all of its witnesses;

The Honorable Joel Schneider
November 26, 2012
Page 2

- Lupin's failure to provide a corporate witness on many of Shionogi's 30(b)(6) deposition topics; and

- Lupin's deficient responses to various document requests.

In addition, the parties have agreed that the current schedule for fact discovery should be extended, and that at least some of the other dates should also be adjusted. *See* D.I. 562. However, Shionogi and Lupin have been unable to agree on an appropriate schedule to date. The parties' competing scheduling proposals are set forth and discussed in more detail below.

I. **Discovery Disputes**

   A. **Lupin's Failure to Comply with the Court's August 27, 2012 Order Regarding Damages Discovery**

In this patent infringement suit, Shionogi has claimed damages resulting from Lupin's at-risk launch of infringing copies of Shionogi's Fortamet® diabetes drug, and has served discovery requests on Lupin relating to its damages claim. Although Lupin concedes that the requested discovery is relevant (D.I. 491 at 6), it initially refused to produce discovery concerning damages on the grounds that those documents allegedly contained "highly sensitive commercial information." D.I. 545 at 1. On July 13, 2012, the Court heard oral argument from both parties on this issue, and subsequently ordered Lupin to produce specific categories of documents related to Shionogi's damages claim. *Id.* at 19. To date, Lupin has failed to comply with the Court's instructions, and production of its damages related discovery remains deficient.

   1. **Documents underlying Lupin's summary sales chart**

During the July 13 hearing, Lupin represented to the Court that it would produce a "summary sales chart" it had created for purposes of the litigation that contained a summary of some of Lupin's infringing sales. Ex. 1, 7/13/2012 Hearing Tr., at 29:15-30:16. Although the Court agreed that the chart should be produced, it expressly held that it would "not confine Lupin's production to just the chart" and ordered Lupin to produce "the documents underlying the summary [chart]." D.I. 545 at 7, 15.

Lupin's production of documents underlying its summary chart remains deficient. By its own admission, Lupin has produced only *two* documents relating to the chart: 1) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*see* Ex. 2 (LUP 0080379)); and 2) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*see* Ex. 3 (LUP 0080440-LUP 0080595)). *See also*, Ex. 4, 10/23/2012 Letter from Lupin to Shionogi at 1.

Shionogi and Lupin conducted a telephonic meet and confer on November 20, 2012, during which Lupin acknowledged that the two documents it produced were ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and alleged that those two documents were the documents underlying the summary sales chart. But, it cannot be disputed that these two ▮▮▮▮▮▮▮ are not the original source of the data contained therein. As noted in the August 27, 2012 Order, Shionogi



need not take Lupin's summary numbers at face value. Rather, Shionogi is entitled to the documents containing the ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ in order to test the accuracy of those facts and to provide meaningful context. D.I. 545 at 7 (citing Fed. R. Evid. 1006). In fact, the two documents Lupin chose to produce contain *less* information than the summary sales chart itself, as they ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ These concerns are precisely the purpose behind the Discovery Rules and the Court's Order. *See id.* (recognizing that documents underlying the summary chart are necessary so that Shionogi does not have to "accept Lupin's chart at face value.").



Accordingly, Shionogi requests that the Court (again) order Lupin to produce all documents underlying the summary sales chart, without redactions, and particularly, the documents containing the ▉▉▉▉▉▉▉▉▉▉▉▉▉▉ in the chart.

### 2. Discovery Regarding Profitability

Following the July 13 hearing, the Court also ordered Lupin to produce "profit information," holding that such discovery was relevant to Shionogi's lost profit and reasonable royalty claims. D.I. 545 at 8, 19. To date, however, Lupin has not produced any documents indicating profits on its infringing sales, and it is impossible for Shionogi to glean any profitability information from Lupin's summary sales chart or any other produced document.

At the November 20 meet and confer, Lupin disagreed as to whether it was required to produce any profit data at all. Although Lupin's argument was rendered moot by the Court's Order, Shionogi further notes that Lupin has no valid objections to producing profit information. First, Lupin has never contested the relevancy of the requested discovery, and the Court has already rejected Lupin's sensitivity concerns. D.I. 545 at 5-6. Second, Lupin has requested the very same information from Shionogi, and Shionogi has produced it. *Id.* at 7-8. Finally, Lupin's ongoing, one-sided refusal to produce relevant profitability data continues to delay discovery and prejudices Shionogi. Accordingly, Shionogi requests that the Court order Lupin (again) to comply with its August 27, 2012 Order and to produce profitability information by no later than Friday, December 7.

### 3. Net Sales and Forecasts

In addition to ordering the production of profit information, the Court also repeatedly recognized the relevance of Lupin's sales information to Shionogi's damages claim. *See* D.I. 545 at 5, n.9 ("the Court finds that the information is relevant to, *inter alia*, if and how much in *sales* Shionogi lost, [and] the lost profits on the lost *sales* . . .") (emphasis added); *id.* at 8 ("the Court finds that … [Lupin's] *sales* and profit information, is relevant to Shionogi's lost profit and reasonable royalty claims.") (emphasis added); *id.* at 8 n.12 ("Lupin's profits and *sales* are relevant . . .") (emphasis added). Although highly relevant, Lupin's production of sales information has been and remains deficient.

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████ Lupin did not provide a response to these missing ███████ at the parties' meet and confer.

Shionogi is entitled to depose ████████ about his declaration, which requires that Lupin first produce the ████████████ relied upon in his declaration. Lupin has also not produced a single ██████ following Lupin's at-risk launch. Given that net sales data and sales forecasts are clearly encompassed by the Court's Order (D.I. 545 at 8-9), Shionogi requests that Lupin be ordered to produce this information by no later than Friday, December 7.

### 4. Internal communications regarding Lupin's re-launch

Prior to the July 13 hearing, Lupin represented to Shionogi that it would produce internal communications concerning Lupin's April 2012 re-launch of its ANDA products (*see* D.I. 491 at 2). Based in part on that representation, the Court then ordered Lupin to produce those communications "agreed to by the parties." D.I. 545 at 19.

Lupin's production of internal communications regarding its re-launch is deficient. Lupin claims that on August 15, 2012, it produced ████████████████ regarding the re-launch. However, a majority of these ██████ were dated either ████████████████████████████████████. Lupin produced almost no ████████████ from the days, weeks, and months immediately preceding the re-launch, when planning and discussion would have occurred.[1] And although Lupin represented to Shionogi that ████████████████ have been produced, Lupin's production contained very few communications from the period of time after the re-launch. Given that Lupin continues to sell its re-launched product, its internal communications regarding its ongoing sales are encompassed by the Court's order regarding the re-launch. Accordingly, Shionogi respectfully requests that the Court order Lupin to produce all internal communications concerning its April 2012 re-launch, as well as any communications concerning Lupin's continued sales.

### 5. Analyses regarding the rescinded ████████████████████████
████████████████

The Court ordered Lupin to produce "Lupin's analysis regarding the potential sale of the ████████████," finding such analysis relevant to the issue of reasonable royalty and other damages calculations. *See* D.I. 545 at 13-14. Although Lupin does not deny that such documents should be produced, it claims that its production already contains the relevant analysis. But, those documents are entirely absent from Lupin's production, and to date, Lupin has provided no documents relating to its analysis of the ████████████████████████

---

[1] In fact, Lupin produced exactly ████████ between February 21 and April 18, 2012.

Accordingly, Shionogi requests that Lupin be ordered to comply with the Court's August 27, 2012 Order and to produce these documents by no later than Friday, December 7.

### B. Lupin's Failure to Comply with the Court's August 27, 2012 Order Regarding ▮

One of the central issues in this litigation is Lupin's assertion that ▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 1, 7/13/2012 Tr. at 65:13-17. During the preliminary injunction proceeding, Shionogi submitted expert reports from Dr. Fleckenstein providing his opinion that ▮▮▮ for a host of reasons. *See* D.I. 210 at ¶¶ 55-69. In partial response, Lupin submitted a declaration from ▮ ▮▮▮ in an attempt to counter some of the flaws identified by Dr. Fleckenstein. *See* D.I. 232 at ¶¶ 3-15.

During the July 13, 2012 status conference, the Court heard argument from Shionogi regarding numerous deficiencies in Lupin's production relating to the ▮ and the relationship between ▮ *See* Ex. 1, 7/13/2012 Tr. at 62:14-71:4. The Court subsequently ordered Lupin to produce numerous categories of documents relating to ▮ *See* D.I. 545 at 15-17. As described more fully below, Lupin has failed to comply with several key provisions in the Court's Order.

#### 1. Extent and General Nature of the Work ▮ Did for Lupin

The Court ordered Lupin to "produce information to enable Shionogi to determine the extent and general nature of the work ▮ did for Lupin." *See* D.I. 545 at 17. Lupin subsequently provided a short written response, stating that ▮▮▮ *See* Ex. 5, Lupin Defendants' Responses in Accordance with August 27, 2012 Order, at p. 2. Lupin also included the ▮ *See id*.

Lupin's response does not comply with the Court's order because there is no way for Shionogi to determine the extent and general nature of the work performed by ▮ using the limited information Lupin has provided. First, the words Lupin uses to describe the studies— ▮ —are vague, amorphous terms that can encompass many different types of tests. Furthermore, ▮▮▮▮

Shionogi respectfully requests that the Court order Lupin to describe each of the types of projects ▮ has performed for Lupin, the number of projects ▮ performed for Lupin per year that were ▮ and the number of projects ▮ performed for Lupin per year that ▮

The Honorable Joel Schneider
November 26, 2012
Page 6

### 2. Other Tmax Testing by ▇▇▇

The Court also ordered Lupin to "identify other Tmax testing ▇▇▇ did for Lupin or a third party, if any." *See* D.I. 545 at 17. In response, Lupin provided a simple statement as to the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Ex. 5, Lupin Defendants' Responses in Accordance with August 27, 2012 Order, at p. 3. That response, however, does not comply with the Court's Order. Indeed, Lupin's response provides ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and does not comply with the Court's direction to "identify" other Tmax testing.

Furthermore, what Lupin has disclosed – ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ is itself meaningless. By listing some values on the basis of ▇▇▇▇▇▇ and others on the basis of ▇▇▇▇▇▇ there is no way for Shionogi to compare the number of tests across groups. Accordingly, Shionogi requests the Court direct Lupin to comply with its previous order and to fully identify all other Tmax testing ▇▇▇ did for Lupin or for any third party.

### C. Lupin's Failure to Produce a Relevant Settlement Agreement and Associated Documents

On October 5, 2012, Shionogi served document requests concerning settlement and licensing agreements between Lupin and third parties involving pharmaceutical products similar to Fortamet®. *See* Ex. 6, Fourth Set of Requests for the Production of Documents and Things, at Nos. 88 and 89. Specifically, the requests sought documents related to a settlement agreement between ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Lupin subsequently refused to produce the requested documents, claiming, among other things, that the documents were inadmissible and the requests were overly broad. *See id.* During the meet and confer, Lupin additionally claimed that the settlement agreement was not relevant because it related to a different product and different patent.

Lupin's objections are without merit. The Court has already expressly rejected similar inadmissibility and breadth arguments when it ordered the production of documents associated with the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* D.I. 545 at 12-15. Specifically, Mylan argued that the ▇▇▇▇▇▇▇▇ was an inadmissible settlement agreement and therefore not discoverable, and, in any event, the contract was irrelevant because its scope extended beyond Shionogi's claims. In rejecting those arguments, the Court explained that such settlement documents were relevant to the amount of Shionogi's damages, and the Federal Circuit had made clear that "settlement agreements can be pertinent to the issue of reasonable royalties." *Id.* at 14-15 (quoting *In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012)). The Court concluded that, despite the contract's scope, these documents were "relevant to the issue of reasonable royalty and other damage calculations," as the documents indicated the value of the product. *Id.* at 13-14. That reasoning applies with even greater force here, where the requested documents relate to settlement agreements for ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

████████ are both pharmaceutical tablets that contain the same active ingredient (i.e. metformin) and have been approved to treat the same indication (i.e. Type-II diabetes).

Finally, Lupin also objected to producing documents reflecting settlement agreement negotiations, citing the Court's August 27, 2012 Order. *See* Ex. 6, Fourth Set of Requests for the Production of Documents and Things, at No. 89. Lupin appears to rely on the Court's statement that "[g]iven the differences between Shionogi's claims and the subject matter of the contract . . . inquiry into the ████████████████ is unwarranted." *See* D.I. 545 at 15. But, those differences are not present here. The disputed requests concern settlement agreements for ████████████████████████████████████████████████████████████ Indeed, Lupin's own expert, ████████████████████████████████████████████████
████████████████████████████████████ ████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████
Accordingly, the Court should order Lupin to produce all documents responsive to this request.

### D. Lupin's Failure to Provide Deposition Dates and Witnesses

#### 1. Lupin's failure to provide deposition dates for almost all of their witnesses

Over eight months ago, on March 12, 2012, Shionogi requested deposition dates for eight Lupin witnesses. Ex. 7 (3/12/2012 Email to Lupin). Throughout the spring and summer of 2012, Shionogi waited for Lupin to rectify its discovery deficiencies and to complete its document production, and thus, no depositions were scheduled. *See* D.I. 389, 494. After the Court's August 27, 2012 Order defining the categories of discovery Lupin was required to produce, Shionogi again asked Lupin to provide deposition dates. In fact, Shionogi requested Lupin propose deposition dates for its witnesses on six separate occasions. *See* Ex. 8 (9/20/2012 Email to Lupin); Ex. 9 (10/12/2012 Email to Lupin); Ex. 10 (10/18/2012 Email to Lupin); Ex. 11 (10/19/2012 Email to Lupin); Ex. 12 (10/24/2012 Email to Lupin); Ex. 13 (11/13/2012 Email to Lupin). Lupin recently offered a *single date* for just *one* of its eight witnesses. On the other hand, Shionogi has proposed multiple, available dates for all of its employee deponents. Accordingly, Shionogi requests the Court order Lupin to provide dates for which each of the requested witnesses is available for deposition by Monday, December 3.

#### 2. Lupin's failure to provide a corporate witness on damages related 30(b)(6) Topics

On February 6, 2012, Shionogi served a Rule 30(b)(6) Deposition Notice ("Notice") on Lupin seeking, among other things, damages related discovery. *See* Ex. 14, Notice of 30(b)(6) Deposition to Lupin, at Topics 8, 13-15, 19, 22, and 25-38 (collectively, "Damages Topics"). More specifically, Shionogi seeks deposition testimony sufficient to show:

- Marketing, distribution, and sales of Lupin's ANDA products. *See id*. at Topic Nos. 14, 22.

- Forecasting, budgeting, and planning associated with Lupin's ANDA products. *See id.* at Topic No. 15.

- Pricing of Lupin's ANDA products. *See id.* at Topic No. 24.

- Manufacturing and shipment of Lupin's ANDA products. *See id.* at Topic Nos. 26, 29, 38.

- Agreements regarding Lupin's ANDA products. *See id.* at Topic No. 22.

- Lupin's September 2011 at-risk launch and April 2012 re-launch, including decision, planning and execution, identities of those involved, communications with the FDA, and production costs and profits associated with the launch and re-launch. *See id.* at Topic Nos. 19, 25, 27, 28, 30-32, 38.

Lupin responded on March 22, 2012, stating that it would ***not*** produce a witness on these topics. *See* Ex. 15, March 22, 2012 Ltr. from Lupin, at 2. Lupin's letter provided no specific objections to the deposition topics, other than a flat refusal to provide a witness. *See id.* On April 2, 2012, Lupin provided a further written response, stating that it would provide a witness on three narrow, damages-related subjects for which it alleged were encompassed in Shionogi's Notice. *See* Ex. 16, April 2, 2012 Ltr. from Lupin, at 2.[2]

Lupin's objections to Shionogi's Notice are improper. By submitting its objections through serial, written correspondence, Lupin has attempted to unilaterally re-write Shionogi's Notice and to obfuscate the topics on which it will produce a witness. This prejudices Shionogi in preparing for depositions and will unnecessarily delay discovery. Furthermore, the Court has consistently instructed Shionogi to depose Lupin witnesses to explore the damages issues (*see, e.g.*, D.I. 545 at 9, 17 n.22; Ex 1, 7/13/2012 Hearing Tr., at 71) and Lupin has not challenged the relevancy of the requested discovery. D.I. 491 at 6. Accordingly, Shionogi requests that the Court order Lupin to provide a corporate designee for the entirety of each of the Damages Topics by Friday, December 7.

### E. Alleged Deficiencies Identified by Lupin

Although Lupin has failed to produce entire categories of relevant discovery ordered by this Court, it has also tried to manufacture issues regarding Shionogi's production. This is little more than a transparent attempt to distract the Court from Lupin's own deficient production made in clear contravention of the Court's prior Orders to Lupin. Shionogi has represented to Lupin—and now represents to this Court—that after making numerous reasonable investigations, it has already produced to Lupin *all* responsive, non-privileged documents within its possession, custody, or control, subject to its previously stated objections. Thus, there are no legitimate

---

[2] Shionogi has previously raised this issue with the Court. *See* D.I. 389 at 3. The Court's August 27, 2012 Order, however, did not address the 30(b)(6) Topics for which Lupin was required to provide a witness.

The Honorable Joel Schneider
November 26, 2012
Page 9

issues remaining regarding any purported "deficiencies" in Shionogi's production. Given Shionogi's unequivocal and repeated declarations that its production is thorough and complete, Lupin's attempt cover its own deficient production with a flurry of accusations directed at Shionogi fails.

## II.  Amended Schedule

The parties have agreed that certain deadlines set forth in the Amended Scheduling Order, including the deadline for fact discovery, should be extended. D.I. 562. Shionogi and Lupin disagree, however, as to the appropriate schedule going forward. Below is a chart comparing the dates in the current Amended Scheduling Order (D.I. 544) to Shionogi and Lupin's proposals:

| Deadline | Current Amended Scheduling Order | Shionogi's Proposal | Lupin's Proposal |
| --- | --- | --- | --- |
| All deposition dates set | | December 7, 2012 | |
| Final day for parties to supplement contentions | | January 14, 2013 | |
| Pretrial fact discovery | November 16, 2012 | January 18, 2013 | February 21, 2013 |
| Opening expert reports | December 20, 2012 | February 21, 2013 | March 22, 2013 |
| Rebuttal expert reports | February 8, 2013 | March 22, 2013 | April 25, 2013 |
| Expert depositions | March 15, 2013 | May 3, 2013 | June 6, 2013 |
| Dispositive and *Daubert* motions | April 15, 2013 | June 6, 2013 | June 11, 2013 |

### A.  Lupin's Pattern of Delay

Lupin's proposed schedule, which extends fact discovery by almost three months, is consistent with Lupin's tactic of delay evident throughout this litigation. Lupin has repeatedly sought to extend fact discovery (*see, e.g.* D.I. 135, D.I. 423, D.I. 430, D.I. 562), while simultaneously refusing to produce entire categories of relevant documents and refusing to provide dates its witnesses are available for deposition. Given the age of this case, there is no reason why Lupin needs until the end of February to complete its depositions. On the other hand, Shionogi's proposed schedule contemplates no more than two depositions per week, while completing all depositions by the middle of January.[3] Given that Shionogi is harmed every day that Lupin's infringing generic product remains on the market, it requests this Court put an end to Lupin's persistent delay.

### B.  Two Additional Deadlines Should be Added to the Scheduling Order

Shionogi has also proposed two additional dates—a deadline to finalize deposition

---

[3]  Shionogi has notified Lupin of its intent to take approximately 8 fact depositions and two 30(b)(6) depositions, and Lupin has noticed three Shionogi witnesses.

The Honorable Joel Schneider
November 26, 2012
Page 10

scheduling and a deadline to supplement contentions—to be included in the amended scheduling order. Shionogi believes both deadlines are necessary.

First, as described above, Lupin has consistently refused to provide deposition dates for its witnesses. Requiring a deadline for all depositions to be scheduled would provide certainty for all parties going forward, and would prevent any one party from withholding deposition dates until near the close of the fact discovery period, thereby forcing yet another an extension of the schedule. During the November 20 meet and confer, Lupin suggested omitting this deadline and simply scheduling another meet and confer during which Lupin would try to propose deposition dates for "most" of its witnesses. But, Lupin's proposal is too little, too late. Shionogi has repeatedly requested to no avail that Lupin provide deposition dates, either through a meet and confer or written correspondence, and Shionogi now requires the Court's intervention on this issue.

Second, Shionogi believes that a deadline for all parties to supplement their contentions is required, because Lupin has not yet provided non-infringement contentions for three of the four asserted claims of the '859 patent-in-suit. Shionogi will be materially prejudiced should Lupin withhold its non-infringement arguments until its rebuttal expert reports. Lupin also appears to take the position that the deadline for supplementation has passed, and that the addition of the January 14 deadline would in effect be granting Plaintiffs an extension for supplementing their contentions. But, under Federal Rule of Civil Procedure 26(e), the duty to supplement is a continuing obligation, and supplementation is routine (and indeed required) throughout the course of fact discovery. *See, e.g.*, *Matsushita Elec. Indus. Co., Ltd. v. Cinram Int'l, Inc.*, 299 F. Supp. 2d 348, 366 (D. Del. 2004) (precluding defendants from relying on non-infringement theory they failed to disclose during fact discovery in response to a contention interrogatory). Given that Plaintiffs have already supplemented both their infringement and validity contentions, Defendants should be required to do the same.

**III.    Issue Not Yet Ripe for the Court's Decision**

Shionogi also brings to the Court's attention a final item which is not yet ripe for the Court's decision. Shionogi believes that Lupin's production of emails is incomplete and lacks key communications regarding research and development of Lupin's infringing tablets. Consistent with the Court's prior order however, Shionogi will explore these deficiencies during the upcoming depositions, and may return to the Court to seek additional documents.[4] *See* D.I. 545 at n.22.

Shionogi appreciates Your Honor's consideration of these issues and looks forward to discussing these issues at the November 29 hearing.

---

[4]    Shionogi also reserves its right to seek additional damages-related discovery following depositions of Lupin's fact witnesses and corporate designees, as instructed by the Court. D.I. 545 at 9-10.

The Honorable Joel Schneider
November 26, 2012
Page 11

> Respectfully submitted,
>
> */s/ Karen Jacobs Louden*
>
> Karen Jacobs Louden (#2881)

cc: All Counsel of Record

6756664

# EXHIBIT 1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

_____

SCIELE PHARMA INC., ANDRX
CORPORATION, ANDRX                    CIVIL ACTION NUMBER:
PHARMACEUTICALS INC. doing
business as WATSON LABORATORIES       10-cv-00135-RBK-JS
INC. - FLORIDA, ANDRX
PHARMACEUTICALS LLC, ANDRX            STATUS HEARING
LABORATORIES (NJ) INC., ANDRX EU
LTD., ANDRX LABS LLC, and
SHIONOGI PHARMA INC.,

     Plaintiffs,

       -vs-

LUPIN LTD., LUPIN PHARMACEUTICALS
INC., MYLAN INC., and MYLAN
PHARMACEUTICALS, INC.,

     Defendants.

       -and-

LUPIN PHARMACEUTICALS INC. and
LUPIN LTD.,

     Counter Claimants,

       -vs-

ANDRX CORPORATION, ANDRX EU LTD.,
ANDRX LABORATORIES (NJ) INC.,
ANDRX PHARMACEUTICALS INC., ANDRX
PHARMACEUTICALS LLC, and SCIELE
PHARMA INC.,

     Counter Defendants.
_____

    Mitchell H. Cohen United States Courthouse
    One John F. Gerry Plaza
    Camden, New Jersey 08101
    July 13, 2012

B E F O R E:            THE HONORABLE JOEL SCHNEIDER
                     UNITED STATES MAGISTRATE JUDGE

```
 1
     A P P E A R A N C E S:
 2
     CONNELL FOLEY
 3   BY: PATRICK J. MURPHY, III, ESQUIRE
     WILMER HALE
 4   BY:  DAVID B. BASSETT, ESQUIRE
     BY:  SOMIL B. TRIVEDI, ESQUIRE
 5   MORRIS, NICHOLS, ARSHT & TUNNELL
     BY:  KAREN JACOBS, ESQUIRE
 6   ATTORNEYS FOR PLAINTIFF, SHIONOGI

 7   RICHARDS, LAYTON & FINGER
     BY: STEVEN J. FINEMAN, ESQUIRE
 8   POLSINELLI SHUGHART
     BY:  GRAHAM L.W. DAY, ESQUIRE
 9   BY:  ROBYN AST-GMOSER, ESQUIRE
     ATTORNEYS FOR DEFENDANT, ANDRX
10
     BAYARD, P.A.
11   BY: RICHARD D. KIRK, ESQUIRE
     KELLEY, DRYE & WARREN
12   BY:  BETH D. JACOB, ESQUIRE
     BY:  CLIFFORD KATZ, ESQUIRE
13   BY:  BARRETT REYHAN McVARY, ESQUIRE
     STERNS & WEINROTH
14   BY:  KAREN A. CONFOY, ESQUIRE
     ATTORNEYS FOR DEFENDANT, LUPIN
15
     MORRIS JAMES
16   BY: MARY B. MATTERER, ESQUIRE
     MCGUIRE WOODS
17   BY:  TIMOTHY H. KRATZ, ESQUIRE
     ATTORNEYS FOR DEFENDANT, MYLAN
18

19

20

21

22

23    Certified as true and correct as required by Title 28,
      U.S.C., Section 753.
24
                    /S/ Carol A. Farrell, CCR, CRR, RMR, CCP
25
```

*United States District Court*
*Camden, New Jersey*

1  response and/or production.  And if I could hand it to the
2  Court, I think this would be a good, easy guide to help us get
3  through the multiple issues.
4          THE COURT:  This chart that there's been so much
5  discussion about, what is it?
6          MR. BASSETT:  This, Your Honor?
7          THE COURT:  No.  The redacted chart.
8          MR. BASSETT:  I should let --
9          THE COURT:  Is that what we call the summary sales
10 chart?
11         MR. BASSETT:  I should --
12         THE COURT:  Is that what Lupin calls the summary
13 sales chart?
14         MR. BASSETT:  We can't --
15         THE COURT:  Lupin, what do you call this chart?
16         MR. KATZ:  We call it the summary sales chart.
17         THE COURT:  Okay.  What is this?  What is that?
18         MR. KATZ:  The summary sales chart contains all the
19 sales information that Shionogi would need.  It contains all
20 of the sales to Lupin's direct customers, broken down by the
21 strength of the drug, and provides the total units to each
22 customer, provides the gross sales to each customer, and the
23 net sales -- and the net sales to each customer.  With that
24 information --
25         THE COURT:  Does it identify the specific customers?

1        MR. KATZ:  Yes, it does.
2        THE COURT:  How many customers, approximately, are
3 there?
4        MR. KATZ:  Your Honor, I could provide you with a
5 copy of an unredacted version.
6        THE COURT:  Okay.
7        This is the document, I take it, that Lupin is
8 willing to give to Shionogi, unredacted, correct?
9        MR. KATZ:  Correct.
10       THE COURT:  And this is -- this is like a Rule of
11 Evidence 1006, I think it is, summary of underlying documents
12 that Lupin has, right?
13       MR. KATZ:  Right.  And I would just point out, this
14 is -- this was created at the request of counsel so it is work
15 product.  And, I mean, we would be providing this in lieu of
16 providing the underlying documents.
17       THE COURT:  Well --
18       MR. KATZ:  Obviously, if Shionogi received the
19 underlying documents, they wouldn't need our summary.
20       THE COURT:  You haven't seen this, correct, Lupin?
21       MR. BASSETT:  No, Your Honor.  Shionogi.
22       THE COURT:  Shionogi.
23       If we lived in a perfect world, and we don't, it may
24 be that once you get this, you'll be satisfied with it, right?
25 Unlikely.

```
 1  discovery --
 2          THE COURT:  Well, didn't we address that already?
 3          MR. BASSETT:  Well, I think so, Your Honor.
 4          THE COURT:  Didn't the Court say it was reserving on
 5  that?
 6          MR. BASSETT:  Yes.  I'm sorry, Your Honor, I was just
 7  trying to be complete with my chart.  So that has been
 8  addressed, Your Honor.
 9          THE COURT:  So if the Court addresses these five
10  categories, and the issues which I'm making a list of that I
11  said I'm reserving on, does that address Shionogi's discovery
12  issues?
13          MR. BASSETT:  Just a moment, Your Honor, if I could.
14          Your Honor, there is one other set of -- category of
15  documents that relate -- were not related to these particular
16  issues that we have been discussing with Lupin, and that is
17  documents related to a company called Ashco.  Ashco is the
18  company that Lupin hired --
19          THE COURT:  How do you spell that?
20          MR. BASSETT:  A-S-H-C-O.  And they are the company --
21          THE COURT:  Now, am I correct, because I thought I
22  read all the papers, but I don't remember seeing this issue.
23          MR. BASSETT:  It was in our letter, Your Honor.
24          THE COURT:  Was it?
25          MS. JACOB:  Your Honor, maybe we can cut it short.
```

1    MS. JACOB:  In India, I think outside of Mumbai.
2    THE COURT:  And they did testing for Lupin in
3 connection with this launch?
4    MS. JACOB:  Not in connection with the launch, but in
5 connection with this, they did the after-dinner testing.
6    THE COURT:  Okay.  And Shionogi's claim theory is
7 what?
8    MR. BASSETT:  We don't have any theory, Your Honor.
9 What we want is discovery about the relationship between Ashco
10 and Lupin.  This was a test that was done for the purpose of
11 this litigation that our experts tell us was deeply flawed,
12 not done according to appropriate scientific standards.
13    THE COURT:  Why do you say the test was done for
14 purposes of this litigation?
15    MR. BASSETT:  Because it was, Your Honor.
16    MS. JACOB:  There is not a dispute about that, Your
17 Honor.
18    THE COURT:  Okay.  It's going to be -- are they going
19 to be an expert in this case?
20    MS. JACOB:  Your Honor, our experts -- our experts
21 will use and rely on this test, and to the extent we need
22 somebody from Ashco to testify about the testing, the
23 underlying tests, we would produce them, but we did not intend
24 to have somebody from Ashco testify as an expert.
25    THE COURT:  Okay.  And you want the contract between

―Status Hearing―

1   deeply flawed scientifically and was done very poorly, and we
2   would like not only to be able to attack it on the merits,
3   but, potentially, investigate whether there is a -- a reason
4   that this test was done that way.
5          THE COURT:  Okay.  I'm going to reserve on this Ashco
6   issue, but, certainly, this is an issue you can explore at the
7   deposition of Ashco, and there is nothing to prevent you from
8   coming back and asking for more documents.
9          MR. BASSETT:  Thank you, Your Honor.  Obviously, we
10  would prefer to have the documents to prepare for the
11  deposition, if possible.
12         MS. JACOB:  And, Your Honor, the only reservation is
13  that if they do ask questions about other testing, we would
14  not want the witness to talk about other Lupin products and
15  pipeline products, which -- specific products they're talking
16  about.  That's -- now you're talking about what Lupin -- I
17  mean --
18         THE COURT:  I'm not going to issue an advisory
19  opinion.  We'll cross that bridge when we come to it.
20         MS. JACOB:  Okay.  Thank you.
21         MR. BASSETT:  I think that completes our list, Your
22  Honor.
23         THE COURT:  Does Mylan have any issues?
24         MR. DAY:  Andrx, Your Honor.  We have no
25  additional --

# EXHIBITS 2-16 REDACTED IN THEIR ENTIRETY