# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

(302) 658-9200
(302) 658-3989 FAX

Karen Jacobs Louden

(302) 351-9227
(302) 425-4681 FAX
klouden@mnat.com

December 21, 2012

**BY E-FILING AND FAX**

The Honorable Joel Schneider
United States District Court for the District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Room 1050
Camden, New Jersey 08101

    Re:    *Sciele Pharma, Inc., et al. v. Lupin Ltd., et al.*, C.A. No. 09-037-RBK-JS

Dear Magistrate Judge Schneider:

    We write in response to Lupin's December 19, 2012 letter opposing Shionogi's request for the production of certain licensing agreements and associated documents.

    Lupin's lengthy letter simply recycles arguments this Court has previously rejected and is prematurely focused on the admissibility of the requested documents at trial instead of whether they are discoverable. But as this Court has already held, at this stage of the litigation the Court is addressing *discoverability*, not *admissibility*. Moreover, Lupin's arguments are grounded on the faulty premise that only licenses to the patents in suit are discoverable. That is most assuredly not the law, and is directly contrary to *Georgia-Pacific*, which expressly contemplates consideration of licenses concerning "comparable" patents or technology. Finally, despite claiming that Shionogi's discovery requests are overly broad and burdensome, Lupin's own exhibits establish that they are not.

**I.    Lupin's Arguments Concern Admissibility, Not Discoverability**

    Without supporting citations, Lupin contends that Shionogi must satisfy an amorphous "heightened standard" to justify the production of settlement agreements. (*See, e.g.*, D.I. 583 at

7, 12.)[1] But courts—including the Federal Circuit—have in fact declared that the usual "broad and liberal" discovery standard also applies in the context of settlement discovery. *See, e.g., In re MSTG, Inc.*, 675 F.3d 1337, 1346 (Fed. Cir. 2012) (noting in the context of settlement discovery that "the Federal Rules of Civil Procedure promote a 'broad and liberal' policy of discovery 'for the parties to obtain the fullest possible knowledge of the issues and facts before trial'"). To the extent Lupin suggests that *Lucent* or *ResQNet* somehow altered this standard, courts have already rejected this argument. *See, e.g., High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2012 WL 1533213, at *7 (D. Kan. Apr. 30, 2012) ("The Court agrees . . . that Sprint's reliance on *Lucent* and *ResQNet* is misplaced in the context of a discovery dispute.").

Relying on this baseless "heightened standard" for damages discovery, Lupin argues at great length that the requested agreements are not discoverable because of purported differences between the agreements and the technology at issue. (*See, e.g.*, D.I. 583 at 2, 4-6, 12-14.) But these supposed differences only go to the *weight and admissibility* of the requested documents, *not their discoverability*. The Court has already joined numerous other courts in rejecting such arguments as premature at the discovery stage.[2] *Georgia-Pacific* explicitly calls for consideration of licenses concerning *different* patents and technology, as those licenses are relevant to the "rates paid by the licensee for the use of other patents *comparable* to the patent in suit" (Factor No. 2) and the "profit or of the selling price that may be customary in the particular business or in *comparable businesses* to allow for the use of the invention or *analogous inventions*" (Factor No. 12). *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971) (emphases added).

Lupin argues that much of this precedent is irrelevant because some cases concern licenses arising from "the ordinary course of business," not litigation. (*See* D.I. 583 at 9.) This is a false distinction. To be sure, there are differences between these types of licenses, but those differences again concern the *weight* a fact finder accords each type of license, not whether the licenses are subject to discovery at all. *Cf. West v. Jewelry Innovations, Inc.*, No. C07-01812 JF (HRL), 2009 WL 668695, at *1 (N.D. Cal. Mar. 13, 2009) ("At the motion hearing, plaintiff seemed to draw a distinction between license negotiations and settlement agreements. But, on the record presented, this court finds no basis to conclude that settlement negotiations are presumptively off limits for discovery."). Other than Lupin's unsupported argument, nothing in

---

[1] This is consistent with numerous other arguments Lupin has made throughout discovery in this litigation; it apparently believes that it is somehow uniquely immune from the routine discovery obligations that apply to every other civil litigant in federal court. But Lupin is wrong.

[2] (*See* D.I. 545 at 14 ("Nonetheless, the Court is not deciding whether the contract is admissible at trial, just whether it is discoverable.").) *See also High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM, 2012 WL 1533213, at *8 (D. Kan. Apr. 30, 2012) ("Here, the Court agrees . . . that a different standard exists for discoverability of other comparable patent licenses and the ultimate admissibility and weight to be given to the licenses at trial."); *Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, No. C05-03117 MJJ, 2007 WL 4166030, at *3 n.5 (N.D. Cal. Nov. 19, 2007) ("In any event, the Court should, and does, reserve admissibility determinations regarding the settlement agreement for another day. The question before the Court today is the discoverability, not the admissibility, of the settlement agreement.").

the record suggests a meaningful difference between these types of licenses for discovery purposes.

The absence of a "heightened standard" does not mean that all license agreements unrelated to the patents or technology at issue are subject to discovery, as Lupin suggests, nor is Shionogi making such an argument. (*See* D.I. 583 at 9-10.) Under *Georgia-Pacific* and subsequent cases, license agreements must be "comparable" to the relevant patents or technology, but courts broadly interpret this standard. *See, e.g., Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2007 WL 704525, at *2 (N.D. Ill. Mar. 1, 2007) (explaining that "[w]hile *Georgia-Pacific* does indicate that the patents to which we may look to determine a reasonable royalty rate must be 'comparable,' courts have often interpreted this factor broadly" and citing supporting cases). For the purposes of discovery, comparability simply requires that the license agreements "*relate* to the same patents *or comparable technology*." *Tyco Healthcare Group LP v. E-Z-EM, Inc.*, No. 2:07-CV-262(TJW), 2010 WL 774878, at *2 (E.D. Tex. Mar. 2, 2010) (emphases added).

Finally, Lupin contends that courts order production of licenses stemming from settlement agreements involving other patents only in rare and "unusual circumstances." (*See* D.I. 583 at 6.) But, once again, that is simply not the case.[3]

## II.    The Requested Discovery is Neither Burdensome Nor Overly Broad

Throughout its letter, Lupin contends that Shionogi's requests are overly broad and takes great pains to suggest that each category of requested discovery potentially encompasses numerous license agreements. (*See, e.g.*, D.I. 583 at 2, 13-14.) But when asked during a meet and confer how many agreements fell within the disputed requests, Lupin refused to answer. And despite spending the better part of sixteen single-spaced pages arguing that Shionogi's requests are too broad, Lupin still never answers this basic, fundamental question.

Indeed, the opposite appears to be true. As one of the declarations to Lupin's letter demonstrates, the requests are in fact not burdensome at all. Exhibit A to the Rebuttal Declaration of Ivan T. Hofmann ("the Hofmann Declaration") is a report by RBC Capital Markets Corp. analyzing litigation in the pharmaceutical industry. The report includes a "Legal

---

[3] *See, e.g., High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM, 2012 WL 1533213, at *10 (D. Kan. Apr. 30, 2012) (ordering production of licenses and settlement agreements involving different patents arising from another litigation); *Biax Corp. v. Nvidia Corp.*, 271 F.R.D. 200, 215 (D. Colo. 2010) (ordering timely production of "licenses and settlements relating to GPU technology"); *Atmel Corp. v. Authentec Inc.*, No. C0602138CW(EDL), 2008 WL 276393, at *1 (N.D. Cal. Jan. 31, 2008) ("Here, these [settlement] agreements at a minimum have some relevance to damages even if they do not involve the precise patents-in-suit, and so must be produced."); *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 654 (N.D. Cal. 2004) (ordering production of "all documents relating to 'any negotiations, agreements, settlements including license agreements, settlement agreements and drafts thereof, granting rights to the technology related to, or incorporate in, covered products and allegedly ancillary products and kidney dialysis machines.'").

Scorecard Summary" that tabulates the number of suits lost, won, and dropped or settled between 2000 and 2009 for a number of generic companies, including Lupin. (Hofmann Decl., Ex. A at 5.) According to the table, of the eight litigations Lupin was involved in between 2000 and 2009, Lupin either dropped or settled *five* of those cases. (*Id.*) Even assuming that Lupin settled each case during that period and settled twice that number in the following three years, Lupin would have entered into only *ten* license agreements since 2000. Presumably only a subset of those licenses are responsive to Shionogi's requests, even applying the proper legal standard rather than Lupin's baseless "heightened standard." In light of this report, combined with Lupin's otherwise unexplained refusal simply to provide the number of agreements it believes are encompassed by the disputed requests, the Court should conclude the disputed requests impose almost no burden on Lupin. Indeed, it was probably a greater burden for Lupin to write and submit to this Court a sixteen-page, single-spaced letter brief on the issue, rather than to simply produce the agreements it is clearly obligated to produce.

### III. The Requested Agreements are Relevant to Shionogi's Damages Claim

In yet another attempt to foreclose appropriate discovery, Lupin argues that license agreements concerning comparable patents and technology are irrelevant because Shionogi and Lupin negotiated a license agreement that never became effective. (*See* D.I. 583 13-14.) While that agreement may indeed be relevant, the agreement does not preclude discovery of other comparable license agreements—a point other courts have recognized:

> The Court agrees . . . that licenses for the patents-in-suit would appear to be more relevant than licenses for other patents not at issue in this case . . . . The fact that licenses for the patents-in-suit may be "more relevant" to a reasonably royalty calculation, however, does not make . . . [other] licenses irrelevant and not discoverable. [Plaintiff] . . . is entitled to discovery regarding any nonprivileged matter that is relevant to it claims or defenses, not just the *most* relevant information.

*High Point SARL*, No. 09-2269-CM, 2012 WL 1533213, at *8.

Lupin's contrary argument is based in large part on its misguided—and, frankly, borderline frivolous—argument that the word "comparable" means "the same."[4] But as Shionogi explained in its opening letter, this is not the law. As *Georgia-Pacific* makes clear, licenses concerning comparable patents (Factor No. 2) and comparable inventions (Factor No. 12) are relevant to a damages inquiry. *See Georgia-Pac. Corp.*, 318 F. Supp. at 1120. In fact, the importance of comparable licenses in this context is underscored by the RBC report relied upon by Lupin's expert. According to the report, almost half of all patent litigation between generic and innovator companies between 2000 and 2009 resulted in settlement, (Hofmann Decl., Ex. A at 4), and nearly all of those cases resulted in the innovator granting the generic a license to the patents in suit. Such licenses are rarely found outside the context of litigation.

---

[4] Unfortunately, Lupin's arguments make it necessary to state the obvious: Webster's Dictionary defines "comparable" as "capable of being compared; having features in common with something else to permit or suggest comparison: He considered the Roman and British empires to be comparable." That most assuredly does not mean "the same."

The Honorable Joel Schneider
December 21, 2012
Page 5

Thus, to the extent there are license agreements relevant to *Georgia-Pacific* factors two and twelve, they most likely stem from litigation.

Lupin's also contends that Shionogi should be forced to rely on a redacted version of the Depomed-Lupin agreement because Lupin believes the agreement is irrelevant. (*See* D.I. 583 5, 13.) This position reflects more of the willful "naiveté" on Lupin's part that the Court has already noted. (*See* D.I. 545 at 7). Shionogi should not be forced to take Lupin's word that the redacted material is irrelevant. "No sane [party] would. Because the settlement documents may be relevant . . . they are discoverable." *Pfizer Inc. v. Apotex Inc.*, 731 F. Supp. 2d 754, 760 (N.D. Ill. 2010).

Equally meritless is Lupin's suggestion that Shionogi is limited to Shionogi's *own* licenses and settlement agreements to determine customary profits or the rates paid by the *licensee* for the use of other patents comparable to the patent in suit. (*See* D.I. 583 at 13-14.) The argument that *Lupin's own licenses* to comparable technology are irrelevant to the inquiry of what *Lupin* would pay for such technology because *Shionogi* may have comparable licenses is nonsensical.

### IV. Underlying Documents and Communications are Relevant and Discoverable

Finally, none of Lupin's objections to the production of the documents and communication underlying the requested agreements has merit. First, the documents and communications Shionogi seeks are relevant and discoverable for all of the reasons set out at pages 6 and 7 of Shionogi's opening letter. (D.I. 581 6, 7). Lupin's analysis of *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269, 2012 WL 1533213 (D. Kan. Apr. 30, 2012); *Pandora Jewelry, LLC v. Bajul Imports, Inc.*, No. 1:10-CV-135, 2011 WL 976623 (E.D. Mo. Mar. 17, 2011); *MSTG, Inc. v. AT&T Mobility LLC*, No. 08 C 7411, 2011 WL 841437 (N.D. Ill. Mar. 8, 2011); and *Software Tree, LLC v. Red Hat, Inc.*, No. 6:09-CV-097, 2010 WL 2788202 (E.D. Tex. Jun. 24, 2010), is misleading. In both *High Point* and *Pandora Jewelry*—contrary to Shionogi's showing as repeatedly made here—the requesting parties failed to show why the sought negotiations and communications were relevant. AT&T initially failed to do the same in *MSTG*. *MSTG*, No. 08 C 7411, 2011 WL 841437 at *1, 2.

In *Software Tree*, the court ordered the production of negotiations relating to license agreements, but declined to order the production of similar documents relating to settlement agreements, recognizing a common law settlement privilege. As Lupin concedes, (D.I. 583 at 11), the Federal Circuit has since clarified that no settlement negotiation privilege applies to "settlement negotiations related to reasonable royalties and damage calculations." *In re MSTG*, 675 F.3d 1377, 1348 (Fed. Cir. 2012).

Lupin's attempt to narrow the dicta in *Tyco Healthcare Group* is equally misleading. In that case, the court expressly found that where license agreements relate "to the same patents or *comparable* technology," "the *underlying documents are relevant* to the calculation of a reasonable royalty using the hypothetical negotiation damages model." No. 2:07-CV-262(TJW), 2010 WL 774878, at *2 (emphases added).

The Honorable Joel Schneider
December 21, 2012
Page 6

      Second, this Court has only recently considered and rejected Lupin's same argument that it should not be compelled to produce certain documents on the ground of confidentiality. (D. 545 at 6.) A protective order is in place, "Lupin has not identified any deficiencies" in that order, and "Lupin concedes it has no reason to believe Shionogi's attorneys will breach its confidentiality obligations." *Id.*

      Third, Lupin misconstrues the dicta in *Charles E. Hill & Associates, Inc. v. ABT Electronics, Inc.*, 854 F.Supp.2d 427 (E.D. Tex. 2012). That court did not require an exceptional showing to justify the production of the underlying documents and communications Shionogi seeks. The same is true of *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, No. 08-4168, 2011 WL 5416334 (D.N.J. Nov. 7, 2011). *Eisai* relates only to settlement "communications." *Id.* at *7. Even assuming for the sake of argument that some type of exceptional showing standard applies—and Shionogi has found no binding authority holding that it does—Shionogi has made a "particularized showing," supported by expert testimony, that the requested documents are relevant, sufficient to "demonstrate that the evidence is calculated to lead to the discovery of admissible evidence." *Id.* (internal citation omitted). Further, as another court in this circuit has made clear, this standard "should not be construed in a manner inconsistent with the broad application of relevance applicable to discovery matters under Rule 26(b)(1)." *Fidelity Fed. Savings & Loan Ass'n. v. Felicetti*, 148 F.R.D. 532, 534 (E.D. Pa 1993).

      Finally, contrary to Lupin's contention, Shionogi cannot gain the information contained in the underlying documents and communications from any other source, public or otherwise. The information contained in these documents is entirely within Lupin's possession, custody and control.

* * * * *

      Lupin's extended attempt to immunize itself from basic discovery obligations needs to end. For these reasons, and the reasons set out in Shionogi's opening brief, Shionogi respectfully requests that the Court order Lupin to produce all documents and communications that are responsive to Shionogi's Document Request Nos. 88 and 89, as outlined on page 2 of Shionogi's opening letter (D.I. 581).

Respectfully submitted,

*/s/ Karen Jacobs Louden*
Karen Jacobs Louden (#2881)

cc: All Counsel of Record

6885535