# EXHIBIT A

# Redacted in its Entirety

# EXHIBIT B

# Redacted in its Entirety

# EXHIBIT C

# Redacted in its Entirety

# EXHIBIT D

# Redacted in its Entirety

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SCIELE PHARMA, INC. *et al.*, Plaintiffs, v. LUPIN LTD., *et al.*, Defendants. | ) | C.A. No. 09-037 (RBK) (JS) (CONSOLIDATED) |
| SHIONOGI PHARMA, INC. *et al.*, Plaintiffs, v. MYLAN, INC., *et al.*, Defendants. | ) | C.A. No. 10-135 (RBK) (JS) |

**LUPIN DEFENDANTS' SUPPLEMENTAL RESPONSES**
**TO INTERROGATORY NOS. 11 AND 12**

Defendants Lupin Ltd. and Lupin Pharmaceuticals, Inc. (collectively "Lupin") provide the following Supplemental Responses to Plaintiff Sciele Pharma, Inc.'s First Set of Interrogatories.

**INTERROGATORY NO. 11**

Describe in detail the bases for any contention by Lupin that Fortamet® is not a commercial success sufficient to evidence the nonobviousness of the invention of the patents in suit under 35 U.S.C. § 103, including without limitation a detailed explanation for any contention by Lupin that (a) Fortamet® is not a commercially successful product, and (b) the commercial success of Fortamet® has no nexus to the invention claimed in the patents in suit, and identify all facts and documents supporting Lupin's contentions.

**RESPONSE**

In addition to the General Objections, Lupin objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product immunity or other

protection against disclosure. Lupin also objects to this interrogatory as premature because fact discovery is ongoing and Lupin's discovery requests to Plaintiffs regarding secondary considerations are still outstanding. Lupin incorporates by reference, as if fully set forth herein, its invalidity contentions.

**SUPPLEMENTAL RESPONSE**

Fortamet® is not a commercially successful product. Fortamet® competes in a crowded and highly saturated market that includes over a dozen generic extended release metformin products, over a dozen generic immediate release metformin products, a number of competing branded products, and numerous other oral treatments for Type 2 diabetes. The nature of this market caused and continues to cause Fortamet® limited sales. Shionogi has been unsuccessful in recent years in growing Fortamet®'s market share beyond less than one-percent. Upon information and belief, this lack of success contributed to Shionogi's decision to cease active promotion of Fortamet® despite over ten years remaining on the patent life for Fortamet®. Further, Shionogi has failed to demonstrate a nexus between the alleged commercial success of Fortamet® and the claimed features of the patents in suit. Evidence of commercial success is only significant if Plaintiffs can prove a nexus between the claimed invention and its commercial success. Shionogi's sales of Fortamet® were and continue to be driven by variables external to the patents-in-suit, such as Shionogi's marketing of Fortamet® and Shionogi's preexisting relationships with potential prescribers and other actors in the pharmaceutical industry.

**INTERROGATORY NO. 12**

State the complete factual and legal basis for Lupin's contention that this case is exceptional under 35 U.S.C. § 285.

**RESPONSE**

In addition to the General Objections, Lupin objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product immunity or other protection against disclosure. Lupin also objects to this interrogatory as premature because fact discovery is ongoing and Lupin's discovery requests to Plaintiffs regarding whether Plaintiffs have tested Lupin's product are still outstanding. Subject to, limited by, and without waiving these objections or the foregoing General Objections, Lupin asserts that if Plaintiffs have maintained this action since January 15, 2009, with counsel for Sciele in possession of Lupin's notice letter, ANDA, and samples of Lupin's ANDA products, failure to investigate whether Lupin's ANDA products infringe during this time would be a basis for Lupin's contention that this case is exceptional under 35 U.S.C. § 285. Alternatively, if plaintiffs did conduct an examination of Lupin's product, then that examination must have shown noninfringement, for example, the information identified in response to Interrogatory No. 1. Either way, Plaintiffs appear to be proceeding without a reasonable basis for their accusation of infringement, which leads to the conclusion that this is in an exceptional case under 35 U.S.C. § 285. *See Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805 (Fed. Cir. 1990).

**SUPPLEMENTAL RESPONSE**

With respect to both asserted patents, Plaintiffs must have known that the assertion of infringement was baseless. For example, with respect to the '859 patent, Plaintiffs appear to be proceeding without a reasonable basis for their accusation of infringement, which leads to the conclusion that this is an exceptional case under 35 U.S.C. § 285. *See Eltech Sys. Corp. v. PPG Indus., Inc.* 903 F. 2d 805 (Fed. Cir. 1990). For example, as of the date of this supplemental response, Plaintiffs have still pointed to no evidence that (as required in all claims of the '859

patent) the membrane in Lupin's product is impermeable to the passage of metformin even though since January 15, 2009, counsel for Shionogi has been in possession of Lupin's notice letter, ANDA, and samples of Lupin's ANDA products.

Similarly, Plaintiffs have asserted infringement of claims of the '866 patent, Plaintiffs filed this action, alleging infringement of the claims of the '866 patent, even though none of those claims were included in the Supplemental Notice of Allowability. Plaintiffs knew or should have known that the asserted claims of the '866 patent were cancelled or amended during prosecution of the '866 patent in the PTO, and it was only due to administrative error by the PTO that the asserted claims were present in the issued '866 patent. The asserted claims extend beyond the scope of the claims allowed in the Supplemental Notice of Allowability at least because the asserted claims extend to dosage forms exhibiting a mean $T_{max}$ up to 7.5 hours under certain conditions, while the allowed claims extend only up to 7 hours under those conditions. In response to Lupin's launch of its ANDA products on September 30, 2011, Plaintiffs sought and obtained a preliminary injunction on the basis of alleged infringement of the '866 patent in a successful effort to suppress competition from Lupin and restrain trade in Lupin's ANDA products which are AB-rated to Fortamet®.

In so doing, Plaintiffs misused the '866 patent. Plaintiffs sought and obtained the preliminary injunction even though Plaintiffs knew or should have known that the asserted claims extended beyond the scope of the claims allowed by the PTO. Even after April 18, 2012, in spite of a Federal Circuit Judge's observation on that date that Shionogi had engaged in misuse of the '866 patent, Shionogi has not withdrawn the '866 patent from the litigation. This evidences that Shionogi not only should have known that its case is baseless, but "*knew* its suit was baseless." *See Eltech Systems*, 903 F.2d at 810 (emphasis in original).

June 12, 2012

OF COUNSEL:

Douglass C. Hochstetler
Kelley Drye & Warren LLP
333 West Wacker Drive, 26th Floor
Chicago, IL 60606
(312) 258-2629
dhochstetler@kelleydrye.com

Beth D. Jacob
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
(212) 808-7624
bjacob@kelleydrye.com

Karen A. Confoy
Erica S. Helms
Sterns & Weinroth
50 W. State Street, Ste 1400
Trenton, NJ 08607-1298

BAYARD P.A.

*__/s/ Stephen B. Brauerman__*

Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com

*Attorneys for Defendants*
*Lupin Ltd. and Lupin Pharmaceuticals, Inc.*

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SCIELE PHARMA, INC., ANDRX CORPORATION, ANDRX PHARMACEUTICALS, INC. (N/K/A WATSON LABORATORIES, INC.-FLORIDA), ANDRX PHARMACEUTICALS, L.L.C., ANDRX LABORATORIES (NJ), INC., ANDRX EU LTD., and ANDRX LABS, L.L.C.,<br><br>Plaintiffs,<br><br>v.<br><br>LUPIN LTD. and LUPIN PHARMACEUTICALS, INC.,<br><br>Defendants. | Civil Action No. 1:09-37-RBK-JS (Consolidated) |
| SHIONOGI PHARMA, INC., ANDRX CORPORATION, ANDRX PHARMACEUTICALS, INC. (N/K/A WATSON LABORATORIES, INC.-FLORIDA), ANDRX PHARMACEUTICALS L.L.C., ANDRX LABORATORIES (NJ), INC., ANDRX EU LTD., and ANDRX LABS, L.L.C.,<br><br>Plaintiffs,<br><br>v.<br><br>MYLAN INC., and MYLAN PHARMACEUTICALS INC.,<br><br>Defendants. | Civil Action No. 1:10-cv-00135-RBK-JS |

**MYLAN INC. AND MYLAN PHARMACEUTICALS INC.'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO SHIONOGI'S FIRST SET OF INTERROGATORIES TO MYLAN (ROG NOS. 11 and 13)**

Defendants Mylan Inc. and Mylan Pharmaceuticals Inc. (collectively "Defendants"), pursuant to Federal Rules of Civil Procedure 26 and 33, hereby supplement their responses and objections to Shionogi's First Set of Interrogatories to Mylan (the "Interrogatories") as follows:

**GENERAL OBJECTIONS**

Mylan Inc. objects generally that Plaintiffs have failed to allege any acts or omissions by Mylan Inc. that possibly could give rise to a cause of action, generally, or a cause of action for patent infringement, specifically. It appears Plaintiffs have sued Mylan Inc. merely because Mylan Pharmaceuticals is a subsidiary of Mylan Inc., a wholly improper and insufficient basis upon which to premise suit. Mylan Inc. and Mylan Pharmaceuticals are separate and distinct business entities. Neither Mylan Inc. nor employees of Mylan Inc. have discoverable information relevant to this lawsuit independent of the information known to Mylan Pharmaceuticals. By joining in these responses, Mylan Inc. does not waive any argument it may have that it is not a proper party to this lawsuit or that Plaintiffs have failed to state a claim upon which relief could be granted or any other argument in defense against Plaintiffs' claims.

Defendants object generally to the Interrogatories on the following grounds, which are hereby incorporated into each response, whether or not stated specifically in each response. The specific objections to individually numbered Interrogatories following each Interrogatory are intended to supplement the General Objections and do not limit the applicability of the General Objections.

1. Defendants object to the Interrogatories to the extent they are not reasonably calculated to lead to the discovery of admissible evidence or relevant to any claims or defenses of any party to this litigation. By responding to the Interrogatories, Defendants do not concede the relevancy or materiality of any Interrogatory, and Defendants reserve the right to object to

any further discovery on these matters and to the admissibility of the Interrogatories and any answer thereto in any deposition, filing or proceeding, including, but not limited to, at trial. Defendants further object to the Interrogatories to the extent that they are overly broad, unduly burdensome, vague and/or ambiguous.

2. Defendants object to the Interrogatories to the extent the definitions and instructions contained therein are inconsistent with the Federal Rules of Civil Procedure and/or the Local Rules for the District of Delaware.

3. Defendants object to the Interrogatories to the extent that Plaintiff attempts to impose upon them obligations different from, or in excess of, those imposed by the Federal Rules of Civil Procedure, the Local Rules for the District of Delaware, or previous stipulations by the parties. Defendants do not undertake any duties not imposed by the Federal Rules of Civil Procedure, or the Local Rules for the District of Delaware, in the absence of agreement by the parties or Order of the Court.

4. Defendants object to the Interrogatories to the extent that Plaintiff seeks information subject to the attorney-client privilege, work product doctrine, joint defense privilege, any other applicable privilege or doctrine, or which is otherwise privileged, confidential or not subject to discovery.

5. Defendants object to the Interrogatories to the extent that they seek information outside the protections afforded by a Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and/or Rule 26.2 of the District of Delaware Local Rules.

6. Defendants object to the Interrogatories to the extent that they seek to elicit information that is subject to an obligation of confidentiality to a third party.

7. Defendants object to the Interrogatories to the extent that they seek information, documents, or things not in the possession, custody, or control of Defendants and/or are not limited as to time.

8. Defendants object to the Interrogatories to the extent that they are premature as fact discovery remains open in this case. Defendants further object to the Interrogatories to the extent they seek information that cannot be determined at this time before Defendants have had full and complete discovery. Defendants base the following responses to Plaintiff's Interrogatories on information and discovery available, and analysis completed, as of the date of this response. Further discovery, independent investigation, and analysis may supply additional facts and add meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to addition to, changes to, or variations from the responses given below.

9. Defendants object to the Interrogatories as overly broad and unduly burdensome to the extent that they require identification of "each" or "all" documents, facts, or persons. Defendants also object to the Interrogatories to the extent they request identification of persons with the "greatest" or "most" knowledge as vague, overly broad, and unduly burdensome.

10. Defendants object to the Interrogatories to the extent that they are premature as they seek expert testimony or opinion, and expert discovery has not yet begun. Defendants reserve the right to assert facts, theories or conclusions during the expert phase of discovery in this case that are not contained in these responses.

11. Defendants object to the Interrogatories to the extent they call for a legal conclusion.

12. Defendants state that the responses herein reflect only that information that Defendants, upon the exercise of reasonable diligence, have been able to gather as of the date of these responses. Defendants reserve the right to supplement these responses as permitted or required under the Federal Rules of Civil Procedure.

13. Defendants' responses, unless otherwise noted, are limited to information relating to or from Defendants.

14. Defendants reserve the right to produce or use any information or documents discovered after service of this response in any phase of this litigation, including but not limited to, in support of or in opposition to any motion, in depositions, or at trial.

15. Defendants object to the Interrogatories to the extent they seek information related to any product that is not identified in Mylan Pharmaceuticals Inc.'s ANDA No. 20-0690.

16. Defendants object to the Interrogatories as irrelevant, overly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and calculated to harass to the extent they call for documents and information related to a finding of willful infringement as the fact that Defendants have filed an ANDA application and Paragraph IV certification cannot support a finding of willful infringement as a matter of law. *See Glaxo Group, Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1350-51 (Fed. Cir. 2004) ("We hold that the mere filing of an ANDA cannot constitute an act of willful infringement compensable by attorney fees under the Drug Price Competition and Patent Restoration Act of 1984, also known as the Hatch-Waxman Act.").

**RESPONSES**

Subject to and without waiving these objections, Defendants further object and respond to the Interrogatories below:

11. State the complete factual and legal basis for Mylan's contention that Plaintiffs are estopped from maintaining that any valid or enforceable claim of either of '859 and '866 patents are infringed by Mylan's products, as alleged in the "Third Defense" in Answer, Defenses, and Counterclaims of Mylan Inc. and Mylan Pharmaceuticals Inc., and identify all supporting facts and documents.

**RESPONSE TO INTERROGATORY NO. 11:**

Defendants object to this Interrogatory on the grounds that it is premature, particularly to the extent that it requires disclosure of information that is the subject of ongoing discovery, including expert discovery. Discovery, generally, has just begun and is ongoing, and Mylan will provide and produce information pertaining to expert testimony as required under Rule 26(a)(2) of the Federal Rules of Civil Procedure and the Scheduling Order entered by the Court on September 30, 2010.

Subject to and without waiving its general or specific objections, Mylan identifies its January 4, 2010, notice letter as well as Mylan Inc.'s and Mylan Pharmaceuticals Inc.'s Preliminary Non-Infringement and Invalidity Contentions Pursuant to U.S. District of New Jersey Local Patent Rules, which Mylan served on Plaintiffs on September 14, 2010, as documents containing the identification of facts and analysis supporting Mylan's estoppel contention identified in this Interrogatory.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

Mylan's supplemental response is made subject to and without waiving its general and specific objections raised in its previous response to this Interrogatory. By virtue of the prosecution proceedings before the United States Patent and Trademark Office ("Patent Office") of the patent applications leading to the '866 patent, Plaintiffs are estopped from maintaining that

any valid or otherwise enforceable claim of the either of the patents in suit are infringed by the Defendants' Products. In particular, Plaintiffs' assertion in this litigation of previously cancelled claims of the '866 patent, and claims depending from such previously cancelled claims, impermissibly broadens the physical and temporal scope of the '866 patent for an anticompetitive effect and, therefore, constitutes patent misuse rendering the '866 patent unenforceable. Patent misuse is generally characterized as the patentee's act of "impermissibly broaden[ing] the 'physical or temporal scope' of the patent grant with anticompetitive effect." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986). That is exactly what has happened here.

Plaintiffs filed this action against Mylan asserting that Mylan has infringed certain claims of the '866 patent even though those claims were rejected by the Patent Office and cancelled by the patent applicants during the prosecution of the '866 patent. In particular, during the prosecution of the application that led to the '866 patent, the patent applicants sought allowance of claim 1, which read as follows:

> 1. (Amended) A controlled release oral dosage form for the reduction of serum glucose levels in human patients with NIDDM, comprising an effective dose of metformin or a pharmaceutically acceptable salt thereof and a controlled-release carrier to control the release of said metformin or pharmaceutically acceptable salt thereof from said dosage form, said dosage form being suitable for providing once-a-day oral administration of the metformin or pharmaceutically acceptable salt thereof, wherein following oral administration of a single dose, the dosage form provides a mean time to maximum plasma concentration ($T_{max}$) of the metformin from 5.5 to 7.5 hours after administration following dinner.

*See* February 24, 2003, Amendment, p. 1.

In addition to rejecting other claims, the patent examiner rejected the aforementioned claim 1 under 35 U.S.C. § 103(a) as being unpatentable over several prior art references including the following: Lewis et al. (WO 00/28989) in view of Chiao (Remington, 1995);

Moeckel et al. (5,955,106) in view of Chiao (Remington, 1995); and Cheng et al. (WO 99/47125) standing alone. *See* May 21, 2003, Office Action, pp. 1-4. In response to the Examiner's rejection of claim 1, applicants expressly cancelled that claim. *See* November 21, 2003 Amendment, pp. 2 and 7.

The patent examiner then provided an incorrect Notice of Allowability that erroneously listed the rejected and cancelled claim 1 as allowable. *See* December 19, 2003, Notice of Allowability. In response to this error, applicants filed a Communication with the patent office acknowledging that the Notice of Allowability erroneously included canceled claim 1 and reaffirming that applicants had in fact cancelled that claim. *See* January 8, 2004, Communication, p. 1. In that same Communication, applicants requested that the patent examiner "provide a supplemental notice of allowance indicating the properly allowed claims." *See id.*, p. 7.

In response to applicants' Communication, the patent examiner provided a Supplemental Notice of Allowability removing cancelled claim 1 from the listing of allowed claims. *See* November 30, 2004, Supplemental Notice of Allowability. Despite this correction, the '866 patent erroneously included cancelled claim 1 when it issued. *See* '866 patent, claim 1. Issued claim 1 of the '866 patent is <u>identical</u> to the claim 1 that the patent examiner had rejected and applicants had cancelled. As such, the '866 patent includes rejected and cancelled subject matter that impermissibly broadens the physical and temporal scope of the '866 patent.

Plaintiffs have impermissibly wielded this same rejected and cancelled subject matter against Mylan for anticompetitive effect. More specifically, Plaintiffs have asserted claims 1, 3, 4, 5, and 25 of the '866 patent ("the Asserted Claims") against Mylan in this litigation to impermissibly delay FDA approval of Mylan's ANDA No. 20-0690, which is directed to an AB-

rated generic equivalent to Fortamet® ("Mylan's Generic Product"). Yet, as indicated above, claim 1 was rejected by the patent examiner and cancelled by applicants. Moreover, claims 3, 4, 5 and 25 depend from rejected and cancelled claim 1. Accordingly, Plaintiffs knew or should have known that all of the Asserted Claims of the '866 patent contained rejected and cancelled subject matter that was only included in the issued '866 patent due to an administrative error of the Patent Office.

Despite Plaintiffs' knowledge of such administrative error, and the fact that the Asserted Claims contain rejected and cancelled subject matter that impermissibly broadens the physical and temporal scope of the '866 patent, Plaintiffs initiated and maintained the present lawsuit against Mylan, improperly alleging infringement of the Asserted Claims. Plaintiffs' improper assertion of patent claims that were not allowed by the Patent Office has suppressed competition from AB-rated generic competitors, including Mylan's Generic Product. More specifically, Mylan has been harmed by Plaintiffs' misuse of the '866 patent due to Plaintiffs' initiation and continuance of this lawsuit and the resulting delay in the launch of Mylan's Generic Product. As a direct result of Plaintiffs' misuse of the '866 patent, Mylan has incurred increased litigation costs and has been impermissibly delayed from entering the market and selling Mylan's Generic Product to customers seeking an AB-related generic substitute for Fortamet®. Finally, the public has been harmed due to the anticompetitive effect caused by a lack of generic substitutes for Fortamet®.

13. State the complete factual and legal basis for Mylan's contention that this case is exceptional under 35 U.S.C. § 285.

**RESPONSE TO INTERROGATORY NO. 13:**

Defendants object to this contention Interrogatory on the grounds that it is premature, particularly to the extent that it requires disclosure of information that is the subject of ongoing discovery, including expert discovery. Discovery, generally, has just begun and is ongoing, and Mylan will provide and produce information pertaining to expert testimony as required under Rule 26(a)(2) of the Federal Rules of Civil Procedure and the Scheduling Order entered by the Court on September 30, 2010. Moreover, Plaintiffs' future conduct may give rise to additional bases for asserting that this case is exceptional under 35 U.S.C. § 285.

To the extent not already addressed, Defendants further object to this Interrogatory on the grounds that it seeks an opinion regarding a pure question of law.

Subject to and without waiving its general and specific objections, Mylan states that it believes Plaintiffs' filing and maintaining of this lawsuit are sufficient to support a finding that this is an exceptional case, particularly in view of the information Mylan provided to Plaintiffs in its January 4, 2010, notice letter as well as Mylan Inc.'s and Mylan Pharmaceuticals Inc.'s Preliminary Non-Infringement and Invalidity Contentions Pursuant to U.S. District of New Jersey Local Patent Rules, which Mylan served on Plaintiffs on September 14, 2010. Mylan anticipates that discovery will lead to additional evidence that would support such a finding as well. Although too early to identify governing case law that may be on point with the circumstances of this case, the reasoning set forth in *Brasseler, U.S.A.I., L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1379-86 (Fed. Cir. 2001), *Eltech Syss. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810-11 (Fed. Cir. 1990), and *Microstrategy Inc. v. Crystal Decisions, Inc.*, 555 F. Supp. 2d

475, 478-83 (D. Del. 2008), for example, may be relevant to the exceptional case inquiry in this case.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:**

Mylan's supplemental response is made subject to and without waiving its general and specific objections raised in its previous response to this Interrogatory. In addition to Mylan's foregoing response to this Interrogatory, Plaintiffs' misuse of the '866 patent provides an additional basis for finding this case exceptional. In particular, Plaintiffs' oral argument before the Federal Circuit on April 18, 2012, indicates that Plaintiffs should have known and in fact did know that their case was baseless. Plaintiffs were fully aware that the Asserted Claims of the '866 patent included rejected and cancelled subject matter and, consequently, "knew [their] suit was baseless." *See Eltech Sys. Corp. v. PPG Indus. Inc.*, 903 F.2d 805, 810 (Fed. Cir. 1990).

Respectfully submitted,

Dated: June 29, 2012.

George J. Barry III

Mary B. Matterer (I.D. #2696)
Richard K. Herrmann (I.D. #405)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
(302) 888-6800
mmatterer@morrisjames.com

*Of Counsel*:

Timothy H. Kratz

Robert L. Florence
George J. Barry III
McGuire Woods LLP
1170 Peachtree Street, Suite 2100
Atlanta, Georgia 30309
(404) 443-5500

Attorneys for Mylan Inc. and Mylan Pharmaceuticals Inc.